PEOPLE v BRYANT

OPINION OF THE COURT

1. CRIMINAL LAW—NONJURY TRIAL—SCENE OF CRIME—APPEAL AND
ERROR.

The failure of defendant's attorney to object at the time the trial
judge, sitting without a jury, viewed the scene of the crime,
having previously discussed with counsel his intention to do so,
precludes raising the objection for the first time on appeal.

2. CRIMINAL LAW—NONJURY TRIAL—JUDICIAL NOTICE—APPEAL AND
ERROR.

A trial court sitting without a jury is ill-advised in taking judicial
notice, without foundation testimony or offer by either party as
an exhibit, of a medical chart purportedly establishing charac-
teristic effects of narcotics or nonnarcotic prescription-required
compounds on human behavior, but where the defendant made
no objection he is precluded from asserting error for the first
time on appeal.

3. HOMICIDE—SECOND-DEGREE MURDER—MALICE—MANSLAUGHTER.

A judgment of conviction of second-degree murder must be va-
cated and the case remanded for a judgment of conviction of
manslaughter and for resentencing where the defendant admit-
ted the homicide but the record failed to show that measure of
malice and absence of excuse or justification essential to the
crime of murder in the second degree, but did sustain a
conviction of manslaughter (MCLA 750.317).

DISSENT BY V. J. BRENNAN, J.

4. HOMICIDE—SECOND-DEGREE MURDER—MALICE—FIRST-DEGREE MUR-
DER.

*The record shows that measure of malice and absence of excuse
or justification essential to the crime of murder in the second*

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 839.
[2] 47 Am Jur 2d, Jury § 14.
[3, 4] 40 Am Jur 2d, Homicide § 550.

*degree where it could have been concluded from conflicting evidence that the defendant was the aggressor in each of two altercations, and the evidence shows that the defendant attempted to secure a weapon between the time of the initial and fatal incidents (MCLA 750.317).*

Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted Division 1 February 7, 1972, at Detroit. (Docket No. 12170.) Decided November 27, 1972.

Billy D. Bryant was convicted of second-degree murder. Defendant appeals. Judgment of conviction vacated, and remanded for entry of a judgment of conviction of manslaughter and resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender, by *Jane Kerr Burgess,* Assistant Defender, for defendant.

Before: BRONSON, P. J., and V. J. BRENNAN and O'HARA,* JJ.

O'HARA, J. Following a nonjury trial in Detroit's Recorder's Court, defendant was found guilty of second-degree murder. MCLA 750.317; MSA 28.549. He appeals of right, asserting several errors. We consider three to be meritorious.

We recite the facts necessary to understand our

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

decision. Two groups of young people, one from Canada and one from this city (quite by accident as far as the record shows), came together on opposite sides of the street, Canfield to be exact, in Detroit. One of the Canadian boys, of Scottish ancestry, was strumming and singing some of his ethnic folk music. One of the American young men characterized the music in words which would have done credit to a Marine drill sergeant. Apparently this is an unforgivable offense within the two groups of young people assembled at the scene. The exact terms of the criticism, which we do not quote, seemed to be "fighting words". An altercation ensued. The deceased prevailed. Defendant fled the scene. After a futile and ill-considered attempt to borrow a gun from a resident of the neighborhood, defendant returned to the scene without a firearm.

It should be noted here that the request made for the loan of a gun, if serious, was so naive as to be well-nigh incredible. He directed the request to an older couple sitting on their front porch near the scene of the fight. They were complete strangers to him. Understandably they simply indicated they had no firearms. The defendant testified at the trial that he wanted a gun so he could go back and scare off his critics and thus redeem his honor. The testimony is unclear, or at best conflicting, as to which party was the aggressor in the second fray, or who was getting the upper hand. It may be fairly inferred that defendant was coming off badly again. In any event, during the struggle the combatants fell among some bushes off to the side of the street. The evidence and testimony established that defendant fatally stabbed the deceased. The cause of death was stipulated—a fatal knife wound.

From these facts, the trial court determined defendant was guilty of second-degree murder.

Defendant alleges error, first because the trial judge viewed the scene of the altercation out of the presence of both counsel and the defendant, citing *People v Eglar,* 19 Mich App 563 (1969). Before viewing the scene the judge discussed with counsel his intention so to do. There was no objection made. Hence, under the circumstances, there was no preserved error.

Defendant also challenges the action of the trial court in taking judicial notice of a medical chart prepared by the Lafayette Clinic purportedly establishing the effect of certain drugs on the human personality.

This claim is highly significant because the defendant testified he was on "speed", apparently some form of amphetamine. He testified he had ingested at least six pills before the incident. It was part of the theory of defense that he was so "high" that he was incapable of entertaining the requisite malice. It should be further noted here that the defendant had a long history of hospitalization, enforced and otherwise, for treatment of mental instability.

As to the effect of the particular compound the defendant had taken, and more importantly the effect thereof upon him, the trial judge asked certain highly sensitive questions. We quote:

*"The Court:* Just a minute * * * is one of the normal characteristics of the users of Speed aggressiveness?

*"A.* I would say no but, of course, in some instances, I suppose it could be; * * * . I don't think I could be a judge of it that far, but I think I would say no.

*"The Court:* Have you ever seen the defendant being aggressive at times when you knew that he had been using speed?

"*A.* I really couldn't answer that."

Thereafter, the court *sua sponte,* without foundation testimony or any offer by either party as an exhibit, said:

"The court will state at this time that chart to which I am referring is one that was prepared by Lafayette Clinic, listing the various types of drugs and addictions and including amphetamines and certain ones described as 'speed', and one of the effects of—that are listed are excitation * * * and *aggressiveness,* and the court will *take judicial notice* that these are characteristic effects of such drugs * * * ." (Emphasis supplied.)

It is difficult to imagine any area of cause and effect of which the court could not take judicial notice more than the whole controversial area of the effect of given narcotics or nonnarcotic prescription-required compounds on human behavior. Little, if any, consensus exists even among the most knowledgeable experts. This action of the trial judge was ill-advised. However, defendant made no objection. The claimed error may not first be asserted on appellate review.

Next, the defendant contends that the whole record does not support a verdict of guilty of murder in the second degree. We examine the claim, and we agree.

This was a street fight between two young men, each intent upon upholding his particular code of conduct. A felonious death resulted. But was it murder? Murder in the second degree is nonetheless murder. Its characteristics include absence of excuse or justification. In this whole tragic affair we must look to the circumstances and conduct that distinguish the homicide from manslaughter.

In general terms second-degree murder is an unlawful killing and a *purpose to kill* without that

deliberation and premeditation which distinguishes it from murder in the first degree, *but without such provocation and stirring of the blood which precludes the exercise of reason* as would in a legal sense exclude the idea of malice aforethought and thereby reduce the homicide to manslaughter. (See, generally, 3 Gillespie, Michigan Criminal Law & Procedure [2d ed], § 1639, p 1973).

We noted with particular attention the following testimony as it bears on aggression and lack of excuse or justification:

"*Q.* Who started the fight?
"*A.* The other fellow, the one that got killed.
"*Q.* Now are you positively sure that you saw the deceased with a tire iron in his hand?
"*A.* Positive."

We are unable to find in the record that measure of malice and absence of excuse or justification essential to the crime of murder in the second degree. Nonetheless, the defendant admitted the homicide. It was a felonious killing. Under the authority of *People v Morrin,* 31 Mich App 301 (1971), as yet undisturbed by our Supreme Court, and *People v Borders,* 37 Mich App 769 (1972), we ascertain first that the verdict was obviously not the product of compromise and second that the proofs do sustain a conviction of manslaughter.

Accordingly, we vacate the judgment of conviction of murder in the second degree and remand for entry of a judgment of conviction of manslaughter. Of necessity, appellant must be resentenced.

Bronson, P. J., concurred.

V. J. Brennan, J. *(dissenting).* I disagree with

my colleagues' interpretation of the record in this case. I have no difficulty whatsoever in finding in this record "that measure of malice and absence of excuse or justification essential to the crime of murder in the second degree". Granted that the testimony was conflicting, there was evidence on which the trial judge could have concluded that defendant, and not decedent, was the aggressor on each occasion. While one (and only one) witness did testify that decedent was armed with a tire iron, four others testified that he was not. Furthermore, there was evidence that between the initial and the fatal altercations, the defendant was attempting to secure a weapon.

Not only do I feel that this record sustains defendant's conviction of second-degree murder, I am also of the opinion that it could also have sustained a conviction of murder in the first degree. I would affirm the court below.