PEOPLE v FERNANDEZ

Docket No. 76117. Submitted March 19, 1985, at Detroit.—Decided
June 3, 1985. Leave to appeal granted, 422 Mich 976.

Stephen R. Fernandez was convicted of conspiracy to commit
first-degree murder and aiding and abetting assault with intent
to murder, following a jury trial in Recorder's Court of Detroit,
Thomas E. Jackson, J. At trial, defendant requested that the
jury be instructed as to conspiracy to commit second-degree
murder on the basis that conspiracy to commit second-degree
murder is a lesser included offense of conspiracy to commit
first-degree murder. The trial court refused to give the re-
quested instruction. In sentencing defendant, the trial court
imposed a sentence of life imprisonment on the conspiracy
conviction, indicating its belief that such a sentence was man-
datory. Defendant appealed. *Held:*

Conspiracy to commit second-degree murder is not a lesser
included offense of conspiracy to commit first-degree murder,
since the planning and agreement elements of the crime of
conspiracy are inconsistent with a finding of an absence of
premeditation and deliberation so as to reduce first-degree
murder to second-degree murder. The trial court did not err in
refusing to instruct the jury as to conspiracy to commit second-
degree murder.

2. It was not error for the trial court to fail to instruct the
jury *sua sponte* as to conspiracy to assault with intent to
murder, since conspiracy to assault with intent to murder is
not a necessarily included offense of conspiracy to commit first-
degree murder, it being, in fact, essentially the same crime.

3. A trial court, in imposing sentence on a conviction for
conspiracy to commit first-degree murder, has the discretion to
impose either a life sentence or a sentence for a term of years.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 40 Am Jur 2d, Homicide § 482 *et seq.*
Modern status of law regarding cure of error, in instruction as to
one offense, by conviction of higher or lesser offense. 15 ALR4th
118.

[3] 40 Am Jur 2d, Homicide § 549 *et seq.*
Length of sentence as violation of constitutional provision prohibit-
ing cruel and unusual punishment. 33 ALR3d 335.

Accordingly, it was error for the trial court to impose a life imprisonment sentence where the court was under the mistaken belief that such a sentence is mandatory upon conviction for conspiracy to commit first-degree murder.

Convictions affirmed, but remanded for resentencing.

1. CONSPIRACY — HOMICIDE — JURY INSTRUCTIONS.

The crime of conspiracy to commit first-degree murder does not include the lesser offense of conspiracy to commit second-degree murder; prior planning and agreement are necessary, mandatory requisite elements of the crime of conspiracy and such foreknowledge and planning are compatible with the substantive crime of first-degree murder but are incompatible and inconsistent with second-degree murder; thus, a trial court, in a prosecution for conspiracy to commit first-degree murder, should not instruct the jury on conspiracy to commit second-degree murder.

2. CONSPIRACY — HOMICIDE — FIRST-DEGREE MURDER — ASSAULT WITH INTENT TO MURDER — JURY INSTRUCTIONS.

It is not error for a trial court in a prosecution for conspiracy to commit first-degree murder to fail to instruct the jury *sua sponte* as to conspiracy to assault with intent to murder, since conspiracy to assault with intent to murder is not a necessarily included offense of conspiracy to commit first-degree murder.

3. CONSPIRACY — HOMICIDE — FIRST-DEGREE MURDER — SENTENCING.

A sentencing court may, within its discretion, sentence one convicted of conspiracy to commit first-degree murder to life imprisonment or to imprisonment for a term of years; accordingly, it is error for the sentencing court to sentence one convicted of conspiracy to commit first-degree murder to life imprisonment where the court does so in the belief that a conviction for conspiracy to commit first-degree murder carries with it a mandatory sentence of life imprisonment.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *R. Steven Whalen),* for defendant on appeal.

Before: Beasley, P.J., and M. J. Kelly and M. Warshawsky,* JJ.

Beasley, P.J. On September 16, 1983, defendant, Stephen Rafel Fernandez, was convicted by a jury of conspiracy to commit first-degree murder, contrary to MCL 750.316; MSA 28.548 and MCL 750.157a; MSA 28.354(1), and aiding and abetting assault with intent to murder, contrary to MCL 750.83; MSA 28.278. On September 29, 1983, defendant was sentenced to what the sentencing judge referred to as mandatory life in prison on the conspiracy conviction and to 120 to 240 months on the assault conviction. He appeals as of right.

Defendant and complainant, Janet Fernandez, were married in 1970. They had one daughter, Brandy, who was born in 1978. Though the marriage went without undue difficulty during the first few years, the relationship ran into trouble in 1981. In December of that year, Janet Fernandez told defendant on the telephone that she wanted a divorce. According to her, defendant became very tense and threatened to kill her or throw acid in her face. On another occasion, defendant twisted his wife's arms and told her that there wasn't going to be a divorce. She moved to her mother's house and filed for divorce on January 29, 1982. Between January 22 and April, 1982, she had little contact with defendant.

In May, 1982, complainant wife met with defendant to discuss their daughter, Brandy. Defendant told his wife that he did not know what he might do if he ever caught complainant with anyone else. On June 24, 1983, still maintaining that there just could not be a divorce, defendant asked her if she still worked in the morning and then told her that

---

* Circuit judge, sitting on the Court of Appeals by assignment.

he could either kill her and go to jail, or he could have it done, and all the problems would be solved.

The next morning, June 25, 1982, complainant was driving her stepfather's car to work when she heard a noise like a brick or a rock hitting the passenger side of the car. She looked back and saw a man wearing a military camouflage jacket standing on the street, near an alley, holding a handgun. Complainant went to work and called 911, the police emergency number. On July 27, 1982, complainant left her mother's house in the morning to go to work. As she came down the steps, she noticed that one of the tires on her car was flat. When she looked up, two men wearing military jackets came running toward her. She screamed, and one of the men stabbed her with a knife. As a result of that incident, complainant had surgery and spent six days in the hospital. Subsequently, she identified Henry Reyna, Jr., as the man who had stabbed her.

Reyna was arrested on September 13, 1982, and another suspect, Migual "Pete" Figueroa, was apprehended on September 14. Migual Figueroa pled guilty to assault with intent to murder and testified for the prosecution in the within case. He testified that, after the failure of the June, 1982, attempt on complainant's life, he agreed with defendant to find a hit man to kill complainant wife, Janet Fernandez. Pursuant to that plan, he contacted Henry Reyna, who eventually agreed to do the job.

Reyna also pled guilty to assault with intent to murder and testified for the prosecution. He stated that he knew defendant and Figueroa, and that Figueroa had approached him and told him that he knew a guy that wanted somebody dead and that that person was willing to pay two grand for it. Reyna testified that Figueroa was supposed to

receive $500 to serve as the go-between. Reyna contacted a man he knew, Omar, and offered him $500 to help with the job. Reyna testified that on July 27, 1982, Omar snatched complainant's purse and he (Reyna) stabbed her with a knife.

Defendant testified in his own behalf and maintained that he had never agreed with anyone, or solicited, incited or induced anyone, to kill his wife. The jury did not buy defendant's version and, as indicated, found him guilty.

On appeal, defendant raises seven issues. First, he contends that the trial judge erred by refusing to give an instruction on conspiracy to commit second-degree murder. A conspiracy is a combination or agreement with others to do something unlawful.[1] Second-degree murder is an unlawful killing and a purpose to kill without that deliberation and premeditation which characterize murder in the first degree.[2] For a conspiracy conviction to lie, there must be proof of two specific intents: (1) the intent to agree (conspire) and (2) the intent to accomplish the substantive offense.[3] However, second-degree murder is not a "specific intent" crime.[4]

In *People v Jenkins*,[5] the Supreme Court held:

"In *People v Carter*, 395 Mich 434; 236 NW2d 500 (1975), we held that there are lesser included offenses to

---

[1] *People v Braylock*, 118 Mich App 54, 56-57; 324 NW2d 530 (1982).

[2] *People v Bryant*, 43 Mich App 659, 663-664; 204 NW2d 746 (1972).

[3] *People v Missouri*, 100 Mich App 310, 340; 299 NW2d 346 (1980); *People v McCracken*, 88 Mich App 286; 276 NW2d 609 (1979), *vacated* 408 Mich 926 (1980). In the cases, there has been little in-depth analysis as to what is meant by intent to accomplish the substantive offense. It does not mean that defendant intends personally to perform the substantive offense. Rather, it seems to mean an intent to have somebody else commit the substantive offense on defendant's behalf.

[4] *People v Barnard*, 93 Mich App 590, 592; 286 NW2d 870 (1979).

[5] 395 Mich 440, 442; 236 NW2d 503 (1975), *reh den* 396 Mich 977 (1976).

felony murder, and that every charge of first-degree murder necessarily includes the lesser offense of second-degree murder.

"The statutory difference in the penalties provided for first-degree murder and second-degree murder are great. A person convicted of first-degree murder must be sentenced to life imprisonment and is not eligible for parole. A person convicted of second-degree murder may be sentenced to life imprisonment or for any term of years up to life, but that sentence is not mandatory. A person convicted of second-degree murder may be paroled. MCLA 791.234; MSA 28.2304.

*"Because of the significant differences in the penalties between first- and second-degree murder, and because every charge of first-degree murder necessarily includes the lesser offense of second-degree murder, in every trial for first-degree murder, including felony murder, the trial court is required to instruct the jury* sua sponte, *and even over objection, on the lesser included offense of second-degree murder.* That was not done here. The trial court instructed the jury that they were to find the defendant either guilty or not guilty of first-degree murder. No mention was made of second-degree murder. MCLA 768.32; MSA 28.1055 states that the jury may find the accused not guilty of the offense in the degree charged, and may find the defendant guilty of a lesser degree of that offense." (Emphasis added.)

In *People v Hamp*,[6] this Court held:

"Since prior 'planning' and 'agreement' are necessary, mandatory requisite elements of the crime of conspiracy, we find it analytically consistent to 'plan' to commit first-degree murder but logically inconsistent to 'plan' to commit second-degree murder. To prove a conspiracy to commit murder, it must be established that each of the conspirators have the intent required for murder and, to establish that intent, there must be foreknowledge of that intent. Foreknowledge and plan are compatible with the substantive crime of first-de-

[6] 110 Mich App 92, 103; 312 NW2d 175 (1981), *lv den* 417 Mich 1053 (1983).

gree murder as both the crime of conspiracy and the crime of first-degree murder share elements of deliberation and premeditation. Prior planning denotes premeditation and deliberation. The elements of conspiracy, conversely, are incompatible and inconsistent with second-degree murder. One does not 'plan' to commit an 'unplanned' substantive crime. It is not 'absence' of the elements but the 'inconsistency' of the elements which lead us to conclude that one conspires to commit first-degree murder but not second-degree murder. *Therefore, because of this inconsistency between the requisite elements of conspiracy and second-degree murder, we cannot conclude as a matter of law that conspiracy to commit first-degree murder includes the lesser offense of conspiracy to commit second-degree murder. Therefore, we find no error in the trial court's failure to instruct,* sua sponte, *as to the latter offense."* (Emphasis added.)

Using similar reasoning, several panels have held that a conviction of conspiracy to commit second-degree murder cannot stand because there is no such crime.[7] However, in *People v Owens*,[8] another panel of this Court expressed disagreement with that rationale, holding that:

"In every murder prosecution the jury must be instructed with regard to second-degree murder as well as first degree. *People v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975). Instructions upon the elements of both first- and second-degree murder are required in prosecutions for incitement to murder as well. *People v Richendollar,* 85 Mich App 74, 78-81; 270 NW2d 530 (1978), *lv den* 405 Mich 820 (1979). Therefore, the trial court erred in failing to instruct the jury on incitement to commit second-degree murder. The *Richendollar* analysis does

[7] *People v Jackson,* 114 Mich App 649, 668; 319 NW2d 613 (1982), *rev'd on other grounds* 421 Mich 39; 365 NW2d 56 (1985); *People v Perry,* 115 Mich App 533, 536; 321 NW2d 719 (1982), *remanded on other grounds* 417 Mich 908; 330 NW2d 852 (1983); *People v Knight,* 122 Mich App 584, 590; 333 NW2d 94 (1983).

[8] 131 Mich App 76, 83-84; 345 NW2d 904 (1983).

not, however, require that instructions regarding manslaughter also be given, as defendant argues.

"Defendant also argues that the same rule should be applied in cases of conspiracy to murder. This Court appears to be divided upon this question. Compare *People v Hence,* 110 Mich App 154, 170-171; 312 NW2d 191 (1981), with *People v Perry,* 115 Mich App 533, 536; 321 NW2d 719 (1982), and *People v Jackson,* 114 Mich App 649, 664-668; 319 NW2d 613 (1982). *We believe that the reasoning of* Richendollar *regarding incitement to murder is equally applicable in cases of conspiracy to murder. Thus, the trial court erred in failing to instruct the jury on conspiracy to commit second-degree murder.*" (Emphasis added.)

Judge WALSH dissented and wrote:

"I find no error, however, in the court's refusal to instruct on conspiracy to commit second-degree murder. I am persuaded that there is no crime of conspiracy to commit second-degree murder." *Owens, supra,* p 90.

Forced to choose, we conclude that the view expressed in *Hamp, supra,* is more consistent with the Supreme Court opinion in *Jenkins* and, thus, more likely to be adopted when the Supreme Court resolves the conflict.

The gist of defendant's argument is that the Supreme Court preferred that a jury should be allowed to exercise leniency, or to compromise, when a defendant has been charged with a crime as serious as first-degree murder. Those considerations also apply to defendant, because the penalty for conspiracy to commit first-degree murder is potentially as severe as that for the crime of first-degree murder.[9] However, the Court's holding in *Jenkins* was based on two considerations: the jury's power to exercise leniency or compromise *and*

[9] See MCL 750.157a; MSA 28.354(1).

the fact that every charge of first-degree murder necessarily includes the lesser offense of second-degree murder.

We conclude that if a crime cannot logically exist then it cannot be necessarily included in another offense. The *Owens* panel gave considerable weight to the leniency or compromise rationale of *Jenkins,* but did not squarely address the logical impossibility of a conspiracy to commit an offense done without premeditation or deliberation. Thus, we hold that the trial court's refusal to give an instruction on conspiracy to commit second-degree murder was not error.

Defendant also argues that the trial court should have, *sua sponte,* given the jury an instruction on conspiracy to assault with intent to murder. Again, he bases his argument on the *Jenkins* decision. Apparently, he reasons that, if he is not entitled to an instruction on conspiracy to commit second-degree murder, some other instruction should be given *sua sponte* to allow the jury to convict of a lesser charge.

We note that a conspiracy to assault with intent to commit murder is hardly, if at all, distinguishable from a conspiracy to commit first-degree murder. The gist of the crime of conspiracy lies in the unlawful agreement of two or more persons.[10] The crime of conspiracy is complete upon formation of the agreement.[11] Thus, the prosecution would have to prove that defendant and others agreed to kill complainant to establish either charge.

For these reasons, we conclude that conspiracy to assault with intent to commit murder is *not* a necessarily included offense of conspiracy to commit first-degree murder. In fact, it is essentially

[10] *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974).

[11] *People v Carter,* 415 Mich 558, 568; 330 NW2d 314 (1982), *reh den* 417 Mich 1105 (1983).

the same offense. We conclude that under *Jenkins* there was no duty to give the instruction *sua sponte,* even if it did provide for a lesser penalty.

Defendant also attacks the imposition of a mandatory life sentence for the crime of conspiracy to commit first-degree murder. In this case, the trial judge made it clear that he believed that he had no sentencing discretion with respect to the conspiracy to commit first-degree murder conviction and that he was required to impose a mandatory life sentence. Thus, we face the following issue: Where no murder has been committed, is it *mandatory* that a defendant convicted of conspiracy to commit murder in the first degree receive a non-paroleable life sentence? We think not.

Since the trial judge assumed he lacked discretion, we set aside the sentence that has been imposed and remand this case to the trial judge for resentencing in accordance with this opinion. In so ruling, we express no opinion regarding the length of the sentence, leaving that subject to the discretion of the trial judge.

The legal question here involves construction of applicable statutes. The conspiracy statute, MCL 750.157a; MSA 28.354(1), provides that:

"Any person who conspires together with 1 or more persons to commit an offense prohibited by law * * * is guilty of the crime of conspiracy punishable as provided herein:

"(a) except as provided in paragraphs (b), (c) and (d) if commission of the offense prohibited by law is punishable by imprisonment for 1 year or more, *the person convicted under this section shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed.*" (Emphasis added.)

In this case, defendant was convicted of conspiracy to commit first-degree murder. The first-degree murder statute, MCL 750.316; MSA 28.548, provides:

"Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and *shall be punished by imprisonment for life.*" (Emphasis added.)

In contrast, the second-degree murder statute, MCL 750.317; MSA 28.549, provides:

"All other kinds of murder shall be murder of the second degree, and shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same."

In *Richardson v Hatch,*[12] a federal court said that the difference between first-degree and second-degree murder is that under a life sentence for first-degree murder the convicted person would not be subject to parole, while under a life sentence for second-degree murder he could be paroled after serving ten years.

For our purposes, the key words of the punishment for conspiracy statute are:

"* * * shall be punished by a penalty *equal* to that which *could* be imposed if he had been convicted of committing the crime he conspired to commit * * *."

At the outset, it should be remembered that in

---

[12] 134 F Supp 110 (WD Mich, 1955).

Michigan, since 1903, the legislative policy has been and is one of indeterminate sentences. In its present form, MCL 769.8; MSA 28.1080 provides:

"When a person is convicted for the first time for the commission of a felony, and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter. The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in imposing the sentence. Before or at the time of imposing the sentence the judge shall ascertain by examination of the convict on oath, or otherwise, and by other evidence as can be obtained tending to indicate briefly the causes of the criminal character or conduct of the convict, which facts and other facts which appear to be pertinent in the case, the judge shall cause to be entered upon the minutes of the court."

The foregoing means that, while the Legislature fixes the maximum penalty for a felony, the trial judge exercises discretion in fixing the minimum sentence. In this connection, the case law has circumscribed the discretion of the trial judge.[13]

MCL 769.9; MSA 28.1081 both spells out the inapplicability of the indeterminate sentencing statute to convictions for offenses carrying *only* a mandatory life sentence and casts light on the legislative intention:

"(1) The provisions of this chapter relative to indeterminate sentences shall not apply to a person convicted for the commission of an offense for which the only punishment prescribed by law is imprisonment for life.

"(2) In all cases where the maximum sentence in the discretion of the court may be imprisonment for life or

---

[13] See *People v Tanner,* 387 Mich 683, 690; 199 NW2d 202 (1972).

any number or term of years, the court may impose a sentence for life or may impose a sentence for any term of years. If the sentence imposed by the court is for any term of years, the court shall fix both the minimum and the maximum of that sentence in terms of years or fraction thereof, and sentences so imposed shall be considered indeterminate sentences. The court shall not impose a sentence in which the maximum penalty is life imprisonment with a minimum for a term of years included in the same sentence.

"(3) In cases involving a major controlled substance offense for which the court is directed by law to impose a sentence which cannot be less than a specified term of years nor more than a specified term of years, the court in imposing the sentence shall fix the length of both the minimum and maximum sentence within those specified limits, in terms of years or fraction thereof, and the sentence so imposed shall be considered an indeterminate sentence."

In general, the conspiracy statute and its sentencing provisions relate to and are designed to fit into the policy of indeterminate sentences. To put it another way, the Legislature did not intend that the indeterminate sentence provisions apply to first-degree murder convictions, but did intend that they be applicable to the conspiracy statute. In interpreting the sentencing provisions of the conspiracy statute, the cases have not been altogether consistent.

In *People v Thomas Hintz*,[14] defendants, Thomas L. and Lawrence L. Hintz, were convicted in a nonjury trial of conspiracy to commit first-degree murder and sentenced to not less than 15 nor more than 25 years in prison. Thus, *Hintz* is a case where, although defendants were convicted of conspiracy to commit first-degree murder, they were *not* given mandatory life sentences. They claimed

[14] 69 Mich App 207, 224; 244 NW2d 414 (1976), *lv den* 397 Mich 852 (1976).

that the maximum should have been five years under MCL 750.505; MSA 28.733. Rejecting that argument, this Court held that, since defendants were charged under MCL 750.316; MSA 28.548, which is the first-degree murder statute, and were found guilty of conspiracy to murder under MCL 750.157a; MSA 28.354(1), MCL 750.505; MSA 28.773 does not apply because conspiracy to murder is not an indictable offense at common law for the punishment of which *no provision* is made by statute. This Court, therefore, concluded that the maximum sentence for conviction of conspiracy to murder is life imprisonment. But, it should be noted that in *Hintz* we did *not* say that the trial judge was obligated to impose a mandatory life imprisonment term. Rather, we said that the maximum sentence was life imprisonment and approved and affirmed sentences of 15 to 25 years, sentences, of course, far short of mandatory life imprisonment.

In *People v Losey*,[15] we affirmed defendant's conviction of conspiracy to commit first-degree murder and the sentence of 40 to 60 years in prison. Among other things, we said:

"Murder is not an element of conspiracy to commit murder because conspiracy to commit a crime is a distinct offense apart from the crime which is the object of the conspiracy. The crime of conspiracy does not depend upon the success or failure of its object. Contrarily, murder is an element of the crime of aiding and abetting murder." (Citation omitted.)

Thus, *Losey* is another case where a defendant, convicted of conspiracy to commit first-degree murder, was *not* given a mandatory life sentence. We affirmed a sentence of 40 to 60 years.

[15] 98 Mich App 189, 198; 296 NW2d 601 (1980), *rev'd on other grounds* 413 Mich 346; 320 NW2d 49 (1982).

In *People v Hart,*[16] defendant pled guilty to conspiracy to commit armed robbery and was sentenced to serve not less than four nor more than ten years in prison. The trial judge, believing that conspiracy to commit armed robbery was nonprobationable, imposed the sentence indicated above, rather than delaying sentence for a year, which had been his preference. We said that the armed robbery statute does not permit placing a person on probation and then said:

"By its terms the probation statute does not preclude probation in a conspiracy case. Probation is available in all prosecutions for crime unless the crime is one of the three enumerated exceptions—murder, treason and armed robbery. Although the conspiracy statute under which defendant was convicted incorporates the armed robbery statute for punishment purposes, this limited incorporation does not transform a conspiracy *prosecution* into a *prosecution* for the offense which was conspired to be committed." *Hart, supra,* p 582.

By analogy, it may be said that a conspiracy to commit first-degree murder charge is a conspiracy prosecution and is not, thereby, transformed into a murder prosecution. In the within case, this conclusion is accented by the fact that no murder occurred.

On the other hand, in *People v Hamp,*[17] defendant was convicted by a jury of conspiracy to commit first-degree murder, aiding and abetting first-degree murder and felony firearm. He was sentenced to serve concurrent terms of life imprisonment for the first two offenses and the mandatory two years for the felony firearm. We held:

"The trial court did not err in imposing a life sen-

[16] 94 Mich App 577, 582; 288 NW2d 459 (1980), *lv den* 409 Mich 857 (1980).

[17] *Supra,* fn 6.

tence for conspiracy to commit murder. MCL 750.316; MSA 28.548 provides that a person convicted of first-degree murder must be sentenced to life imprisonment. The conspiracy statute, MCL 750.157a; MSA 28.354(1), provides that a person convicted of conspiracy 'shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit * * *'. Neither statute is ambiguous. *Therefore, there is no room for statutory construction or an investigation into that which the Legislature 'probably intended'. Thus, the trial court did not err in sentencing defendant to a mandatory term of life imprisonment."* (Emphasis added.) *Hamp, supra,* pp 104-105.

While disagreeing with the emphasized portion, our difference with *Hamp* is a narrow one. While believing that a sentencing judge has authority to impose a life sentence for conspiracy to commit first-degree murder, we do not believe that imposition of a life sentence without parole is mandatory. On the contrary, life in prison is a permissible sentence within the discretion of the sentencing judge, but is not required.

In *People v Tinskey*,[18] in reversing a conspiracy to commit abortion conviction, the Supreme Court said:

"[T]he Legislature has indicated that in Michigan the penalty for an attempt to commit an offense shall be significantly less than the penalty for the substantive offense. * * * We note, without resting decision on this ground, that to charge a person with conspiracy—which may subject the offender to the same jail or prison sentence as the substantive offense—as a substitute for charging attempt to commit the offense tends to circumvent that legislative policy." *Tinskey, supra,* p 109.

The parole statute, MCL 791.233(1)(b); MSA

[18] 394 Mich 108, 109; 228 NW2d 782 (1975).

28.2303(1)(b), provides that generally parole shall not be granted to a prisoner until he has served the minimum term imposed by the court, less allowances for good time. The next section, MCL 791.233(1)(c); MSA 28.2303(1)(c), provides that notwithstanding subdivision (b), parole shall not be granted to a prisoner convicted of certain crimes until he has served the minimum term imposed by the court, less allowance for disciplinary credits.

While it is true that parole is not available to those convicted of first-degree murder, we do not believe that the Legislature intended that, in every case where a defendant is convicted of conspiracy to commit first-degree murder, a sentence to a life term without possibility of parole is mandated. In this case, defendant's wife was not killed, so no murder occurred. Under Michigan law, the chief, first and foremost offense carrying a mandatory life term is murder in the first degree.[19] We do not believe that the Legislature had any intention of equating conspiracy to commit murder, where no homicide occurred, with murder in the first degree.

While the language of the statute is "shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit", it must be viewed in the context of the indeterminate sentencing policy. For example, in using the word "shall", we believe the Legislature contemplated a felony with an indeterminate sentence. In short, the intention of the Legislature was that the trial judge imposing a sentence for conspiracy would have the same discretion as he would have in imposing an indeterminate sentence for the target

---

[19] The Legislature has also provided for a mandatory life sentence where defendant is convicted of treason, MCL 750.544; MSA 28.812, or manufacture or delivery of more than 650 grams of a controlled substance, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i).

offense. The Legislature wanted to make it clear that in sentencing for conspiracy, the sentencing judge had discretion to impose just as severe a maximum sentence as for the substantive offense. The Legislature was not thinking of a *mandatory* sentence, which is a limitation upon sentencing discretion.

Thus, when the Legislature used the words "a penalty equal to that which could be imposed", we believe that the legislative intention was to authorize and empower the sentencing judge as to the maximum penalty that he could impose. Applied in this case, we believe that the sentencing judge "could" impose a life sentence if, in his discretion, he believed it advisable. We do not, however, conclude that he was required to impose a life sentence in a situation such as this where no murder, in fact, occurred.

Additional evidence of the fact that the Legislature intended to vest discretion in the sentencing judge is the last portion of the conspiracy statute which provides, "and in the discretion of the court an additional penalty of a fine of $10,000 may be imposed". It would be incongruous for the Legislature to provide for a mandatory maximum life sentence and, at the same time, vest discretion in the trial judge to impose an additional penalty by way of a fine. A more likely interpretation of the legislative intention is that the Legislature gave the trial judge discretion as to whether or not to impose a life sentence and an additional area of discretion with a possibility of imposing a fine.

While recognizing that the cases are not unanimous, we do not believe that the trial judge was bound to impose a mandatory nonparolable life sentence on defendant. Thus, we set aside defendant's sentence and remand this case to the trial judge for resentencing consistent with this opinion.

The trial judge may, within his discretion, sentence defendant to life or for a term of years, in which latter event he shall fix a minimum and a maximum term of years.

Since we are remanding this case for resentencing, defendant's additional claims that the sentence is cruel and unusual, shocking to the judicial conscience and deprives him of due process and equal protection of the law are not reviewed.[20]

Defendant contends that he was denied his right to be present at a "crucial" stage of the trial and his right to effective assistance of counsel because the judge gave the jury a tape recording of the instructions, which were given in the presence of and without objection by defendant and his lawyer. In our view, this did not constitute reversible error.[21]

Defendant's remaining claims on appeal lack merit. Our review of the evidence indicates that it was sufficient to allow a rational trier of fact to find that the essential elements of conspiracy to commit first-degree murder, and of aiding and abetting assault with intent to murder, existed beyond a reasonable doubt.[22] The admission of complainant's prior consistent statement was not error, as defense counsel repeatedly suggested that complainant was "embellishing" her story. Thus, the statements were admissible to rebut charges of recent fabrication.[23]

---

[20] *People v Gunn,* 34 Mich App 106, 111; 190 NW2d 793 (1971), *lv gtd and remanded* 385 Mich 776 (1971).

[21] *People v Cavanaugh,* 127 Mich App 632, 642-643; 339 NW2d 509 (1983); *People v Small,* 120 Mich App 442, 445-446; 327 NW2d 504 (1982).

[22] *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *cert den sub nom Michigan v Hampton,* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980).

[23] *People v Washington,* 100 Mich App 628, 633; 300 NW2d 347 (1980).

We need not decide if a conviction of both inciting, exhorting or inducing to commit first-degree murder, MCL 750.157b; MSA 28.354(2), and conspiracy to commit first-degree murder would constitute factual double jeopardy, because defendant was convicted of only one of those charges.[24]

· Remanded for resentencing; otherwise, affirmed.

---

[24] See *Ball v United States,* — US —; 105 S Ct 1668; 84 L Ed 2d 740 (1985).