PEOPLE v GILBERT

Docket No. 111946. Submitted February 13, 1990, at Lansing. Decided
    May 21, 1990.

   Paul Edward Gilbert was convicted of conspiracy to commit
   second-degree murder, assault with intent to commit murder,
   and unarmed robbery following a jury trial in Shiawassee
   Circuit Court, Gerald D. Lostracco, J. Defendant was sentenced
   to life imprisonment for each of his conspiracy and assault
   convictions and ten to fifteen years for the robbery conviction.
   Defendant appealed.

   The Court of Appeals *held:*

   1. The court did not err in permitting the prosecutor to
   impeach and cross-examine a res gestae witness called by the
   prosecutor.

   2. It was not improper for the prosecutor to argue that the
   res gestae witness' testimony was fabricated.

   3. It was error for the prosecution to question defendant
   regarding his exercise of his right to remain silent while in
   police custody. The error is harmless, however, and does not
   require reversal of defendant's convictions.

   4. There is no crime of conspiracy to commit second-degree
   murder, and it was error for the court to instruct the jury
   regarding such an offense. Defendant's conspiracy conviction
   and sentence are vacated.

   5. The court's imposition of a sentence greater than that
   recommended by the sentencing guidelines for the assault
   conviction was not error and the life sentence imposed is
   neither disproportionate nor excessive.

   Defendant's conviction and sentence for conspiracy to commit
   second-degree murder are vacated. Defendant's other convic-
   tions and sentences are affirmed.

1. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES.

   A prosecutor no longer has to produce res gestae witnesses at

REFERENCES

Am Jur 2d, Appeal and Error §§ 549, 601, 602, 783-792; Conspiracy
   § 13; Homicide § 45; Trial §§ 221, 305; Witnesses §§ 481, 619, 622.
Impeachment of defendant in criminal case by showing defendant's
   prearrest silence—state cases. 35 ALR4th 731.

trial, and he may still impeach or cross-examine a witness whom he himself called if permitted by the trial judge; whether to permit impeachment is left to the discretion of the trial judge (MCL 767.40[a]; MSA 28.980[1]).

2. CRIMINAL LAW — PROSECUTING ATTORNEYS — WITNESSES — PROSE-CUTORIAL COMMENT.

A prosecutor may comment on the testimony in a case and argue, on the basis of the facts presented, that a witness is not worthy of belief.

3. EVIDENCE — FAILURE TO OBJECT — APPEAL.

Appellate review of the propriety of the admission of a question or testimony is generally precluded where the defendant fails to object to the question or testimony at trial; however, review is appropriate where the issues raised present a significant constitutional question.

4. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO REMAIN SILENT.

A prosecutor may not use a defendant's exercise of his Fifth Amendment right to remain silent against him at trial; a defendant's silence during police questioning may be used only to impeach his assertion that he made a statement (US Const, Am V).

5. CRIMINAL LAW — HARMLESS ERROR.

Two inquiries must be made to determine whether an error was harmless: first, was the error so offensive to the maintenance of a sound judicial system that it can never be regarded as harmless and, second, was the error harmless beyond a reasonable doubt.

6. CRIMINAL LAW — CONSPIRACY TO COMMIT SECOND-DEGREE MURDER.

There is no crime of conspiracy to commit second-degree murder.

*Frank J. Kelley,* Attorney General, *Ward L. Clarkson,* Prosecuting Attorney, and *Charles D. Hackney,* Assistant Attorney General, for the people.

State Appellate Defender (by *P. E. Bennett*), for defendant on appeal.

Before: MICHAEL J. KELLY, P.J., and WAHLS and SAWYER, JJ.

Michael J. Kelly, P.J. Defendant was convicted by a jury of conspiracy to commit second-degree murder, MCL 750.157a; MSA 28.354(1), assault with intent to commit murder, MCL 750.83; MSA 28.278, and unarmed robbery, MCL 750.530; MSA 28.798. The court sentenced defendant to two sentences of life imprisonment for his conspiracy and assault convictions and ten to fifteen years for the robbery conviction, the sentences to run concurrently. Defendant now appeals his convictions and sentences as of right.

Defendant's convictions arise out of the attempted murder and robbery of Richard Morgan in July of 1987. Morgan picked up defendant and his codefendant, Carl Maddox, as they were hitchhiking one night. All three men had been drinking, and they continued to drink as they drove around the Flint area. When they stopped at a nearby field, defendant and Maddox assaulted and robbed Morgan, leaving him for dead near a gravel pit. Morgan survived the assault and testified at trial that he had been beaten and stabbed by the two men and that the dark-haired one (defendant) approached him with a knife.

The prosecution's theory of the case was that, after defendant and Maddox had beaten and robbed Morgan, defendant attempted to kill Morgan with a knife. Maddox testified that defendant suggested killing Morgan when they got out of the car. Maddox testified that he kicked Morgan and that defendant stabbed Morgan and cut his throat.

Defendant's theory of the case was that Maddox beat and stabbed Morgan while defendant was too drunk to notice or remember what happened. Defendant's version was supported by the testimony of Harvey Duranseau, whom the prosecutor called as a res gestae witness. Duranseau testified that on the morning in question he was near the

gravel pit and saw a man fitting Maddox's description drag another man from a car, roll him into a lake, and cut him with a knife. Over defendant's objection, the trial court permitted the prosecutor to impeach Duranseau's credibility. Duranseau apparently left the scene without assisting the victim. Duranseau testified that he did not inform the police of the incident because his presence at the gravel pit was a violation of his parole. Duranseau did not report the incident until May of 1988, almost a year later.

At the close of proofs, defendant moved for a mistrial, which the court denied. When instructing the jury regarding the charge of conspiracy to commit first-degree murder, the court also instructed the jury regarding the lesser included offense of conspiracy to commit second-degree murder. The court did this by reading the jury the instruction regarding criminal conspiracy, followed by the instructions for first- and second-degree murder. Later on the court reread these instructions at the jury's request. Defendant did not object to these instructions. The jury found defendant guilty of the lesser included offense of conspiracy to commit second-degree murder and of unarmed robbery and assault with intent to commit murder.

I

Defendant argues that reversal is required because the circuit court erred in permitting the prosecutor to impeach the credibility of a res gestae witness, Harvey Duranseau, and because the prosecutor improperly argued to the jury that Duranseau's testimony was fabricated. We disagree.

The general rule under the common law is that

a party may not impeach his own witness. *People v White,* 401 Mich 482, 508; 257 NW2d 912 (1977). One of the numerous exceptions to this general rule is that the prosecutor may cross-examine and impeach res gestae witnesses he is required by law to produce at trial. *Id.*

Under the present version of the res gestae witness statute, MCL 767.40(a); MSA 28.980(1), which was in effect during defendant's trial, the prosecutor no longer has to produce res gestae witnesses at trial. MCL 767.40a(5); MSA 28.980(1)(5); *People v Calhoun,* 178 Mich App 517, 522; 444 NW2d 232 (1989). Subsection (6) of the res gestae statute provides:

> Any party may within the discretion of the court impeach or cross-examine any witnesses as though the witness had been called by another party. [MCL 767.40a(6); MSA 28.980(1)(6).]

Thus, although the prosecutor is no longer required to produce all res gestae witnesses, he may still impeach or cross-examine a witness whom he himself called if permitted by the trial judge. Whether to permit this impeachment is left to the trial judge's discretion under the statute.

Here, Mr. Duranseau's testimony gave an account of the crime which differed greatly from that of the prosecutor's other witnesses. Duranseau could not remember key details and did not report witnessing the crime until almost a year after it occurred. The circuit court did not err in permitting the prosecutor to impeach and cross-examine Mr. Duranseau.

Nor was it improper for the prosecutor to argue that Duranseau's testimony was fabricated. The prosecutor is permitted to comment on the testimony in a case and to argue that, upon the facts

presented, a witness is not worthy of belief or is lying. *People v Sharbnow,* 174 Mich App 94, 100; 435 NW2d 772 (1989), lv den 433 Mich 893 (1989). The prosecutor's comments were based upon the evidence at trial. He could properly argue that Duranseau's testimony was not credible.

II

Defendant argues that his convictions must be reversed because the prosecutor improperly questioned defendant regarding his exercise of his right to remain silent while in police custody. We agree that this was improper, but find that reversal is not required.

In cross-examining defendant, the prosecutor asked the following questions:

> *Q.* You didn't give a statement in this matter, did you?
> *A.* No, sir, I did not.
> *Q.* So I guess you didn't try to frame Mr. Maddox, did you?
> *A.* No, sir, I didn't. That was information he compiled from his attorney.

Defense counsel did not object to this questioning. Following the prosecutor's cross-examination of defendant, the court instructed the jury as follows:

> Prior to redirect, I want to just instruct and caution the jury relative to the question that he gave to the Defendant that he gave no statement to the police, and I just want to instruct—I think we've already covered it—that an accused person has a right against self-incrimination, including giving a statement. Keep that instruction in mind at this point.

Where a defendant fails to object to a question

or testimony at trial, the propriety of its admission is generally not preserved for appeal. MRE 103(a) (1). However, review is appropriate where the issues raised present a significant constitutional question. *People v Davis,* 181 Mich App 354, 355; 448 NW2d 842 (1989).

In *People v Bobo,* 390 Mich 355, 359; 212 NW2d 190 (1973), our Supreme Court held that the prosecutor may not use a defendant's exercise of his Fifth Amendment right to remain silent against him at trial; a defendant's silence during police questioning may be used only to impeach his assertion that he made a statement. See also *People v Sain,* 407 Mich 412, 415; 285 NW2d 772 (1979).

Here, defendant did not claim to have made any prior statements to police, so the prosecutor's questioning regarding defendant's failure to make a statement was improper under *Bobo* and *Sain.* Despite this, we find that any error was harmless and does not require reversal of defendant's convictions. Two inquiries must be made to determine whether an error was harmless: first, whether the error was so offensive to the maintenance of a sound judicial system that it can never be regarded as harmless and, second, whether the error was harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972). The prosecutor's questions, despite their constitutional implications, were not so offensive as to be intolerable. Nor did the questions and answers have any impact on the verdict. The evidence of defendant's guilt was overwhelming. Both the victim, Morgan, and the codefendant, Maddox, testified that defendant attacked Morgan with a knife; Duranseau's testimony to the contrary was simply not credible. Additionally, defendant's failure to give a statement to the police was

consistent with defendant's testimony that he was drunk on the night in question and did not remember anything about the assault on Morgan. Evidence that defendant did not make a statement to police had a negligible effect on the jury's verdict and was harmless beyond a reasonable doubt.

III

Defendant argues that the circuit court erred in instructing the jury regarding the lesser included offense of conspiracy to commit second-degree murder and that his conviction for this offense must be reversed. Defendant contends that the offense of conspiracy to commit second-degree murder is nonexistant, so it was erroneous for the court to instruct the jury regarding this offense. We agree and vacate defendant's conspiracy conviction.

There is currently a split of authority in this Court regarding whether conspiracy to commit second-degree murder exists as a lesser included offense of conspiracy to commit first-degree murder. Several panels of this Court have reasoned that this crime is illogical because of the inconsistent intent elements of criminal conspiracy and second-degree murder and held that conspiracy to commit second-degree murder does not exist as a crime. *People v Fernandez,* 143 Mich App 388, 392-396; 372 NW2d 567 (1985), rev'd on other grounds 427 Mich 321; 398 NW2d 311 (1986); *People v Jackson,* 114 Mich App 649, 665-667; 319 NW2d 613 (1982), rev'd on other grounds 421 Mich 39; 365 NW2d 56 (1984); *People v Hamp,* 110 Mich App 92, 102-103; 312 NW2d 175 (1981). However, another panel of this Court, in *People v Owens,* 131 Mich App 76, 84; 345 NW2d 904 (1983), vacated 430 Mich 876 (1988), held that conspiracy to

commit second-degree murder was a necessarily included lesser offense of conspiracy to commit first-degree murder and therefore a trial judge is required to give an instruction regarding this lesser included offense when a defendant is charged with conspiracy to commit first-degree murder. Our Supreme Court expressly declined to resolve the issue whether the offense exists as a lesser included offense of conspiracy to commit first-degree murder. *People v Fernandez,* 427 Mich 321, 342; 398 NW2d 311 (1986).

After review of the case law, we are persuaded that the crime of conspiracy to commit second-degree murder does not exist and reject the contrary holding of *Owens.*

Criminal conspiracy is a specific intent crime which arises from a mutual agreement between two or more parties to do or accomplish a crime or unlawful act. *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974). The gist of a criminal conspiracy is the specific, mutual agreement to perform the crime in question; the conspiracy statute provides punishment for the actual advance planning and agreement to perform the substantive criminal acts. *Id.* However, second-degree murder is distinguishable from first-degree murder in that it does not require premeditation and in fact may not require a specific intent to kill. MCL 750.316; MSA 28.548, MCL 750.317; MSA 28.549; *People v Aaron,* 409 Mich 672, 728-729; 299 NW2d 304 (1980).

In *Hamp, supra,* p 103, the Court reasoned:

> Since prior "planning" and "agreement" are necessary, mandatory requisite elements of the crime of conspiracy, we find it analytically consistent to "plan" to commit first-degree murder but logically inconsistent to "plan" to commit second-

degree murder. To prove a conspiracy to commit murder, it must be established that each of the conspirators have [sic] the intent required for murder and, to establish that intent, there must be foreknowledge of that intent. Foreknowledge and plan are compatible with the substantive crime of first-degree murder as both the crime of conspiracy and the crime of first-degree murder share elements of deliberation and premeditation. Prior planning denotes premeditation and deliberation. The elements of conspiracy, conversely, are incompatible and inconsistent with second-degree murder. One does not "plan" to commit an "unplanned" substantive crime. It is not "absence" of the elements but the "inconsistency" of the elements which lead [sic] us to conclude that one conspires to commit first-degree murder but not second-degree murder.

Because of this logical inconsistency, we conclude as a matter of law that there is no crime of conspiracy to commit second-degree murder. We therefore vacate defendant's conviction and sentence for conspiracy to commit second-degree murder.

IV

Finally, defendant argues he should be resentenced because the court exceeded the guidelines recommendations and because his life sentence was so excessive as to shock our judicial conscience under *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983). We disagree.

The sentencing guidelines recommended that defendant receive a minimum sentence of ten to twenty years for assault with intent to commit murder. In sentencing defendant, the judge articulated his specific reasons for not following the guidelines recommendations and placed those rea-

sons on the Sentencing Information Report form. This was proper under *People v Fleming,* 428 Mich 408, 428; 410 NW2d 266 (1987). Furthermore, defendant's life sentence does not strike us as excessive. The guidelines recommended that defendant receive a minimum sentence of ten to twenty years. Under MCL 791.234(4); MSA 28.2304(4), a prisoner serving a life sentence is eligible for parole after serving a ten-year minimum sentence. Under MCL 791.233b(d); MSA 28.2303(3)(d), a prisoner convicted of assault with intent to commit murder is not eligible for parole until he has served the minimum sentence imposed. Under his life sentence, defendant will be eligible for parole at the same time he would have been if the circuit court had sentenced him to the shortest minimum sentence recommended by the guidelines. Had the court followed the guidelines, but imposed a minimum sentence at the higher end of the guidelines recommendations, defendant would have had to serve a longer minimum term than under his life sentence before being eligible for parole. Compared to the guidelines recommendations, defendant's sentence is not disproportionate nor excessive. Our conscience is not shocked.

Defendant's conviction and sentence for conspiracy to commit second-degree murder are vacated; defendant's remaining convictions and sentences are hereby affirmed.