PEOPLE v VANOVER

Docket No. 150695. Submitted May 12, 1993, at Detroit. Decided July 6, 1993, at 9:20 A.M. Leave to appeal sought.

Curtis Vanover was convicted by a jury in the Recorder's Court of Detroit, Terrance K. Boyle, J., of criminal sexual conduct in the first degree. The defendant appealed, arguing that he was denied a fair trial by the prosecution's elicitation of testimony concerning his postarrest, post-*Miranda* silence and the prosecution's reference to that testimony during closing arguments.

The Court of Appeals *held:*

The elicitation of the testimony was proper to rebut the impression left by the direct examination of the defendant that he had cooperated fully and freely with law enforcement authorities. The prosecution's comments during closing arguments also were proper, because there was no suggestion that the evidence of the silence could be used as direct evidence, but rather that it could be used in assessing the credibility of the defendant's testimony. Even if the prosecution's questions and comments regarding the defendant's silence were improper, the error was harmless, and reversal is not required.

Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

*Goldpaugh & Associates, P.C.* (by *Donald H. Stolberg),* for the defendant.

Before: JANSEN, P.J., and REILLY and M. R. KNOBLOCK,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

Reilly, J. Defendant appeals as of right his conviction, after a jury trial, of one count of criminal sexual conduct in the first degree, MCL 750.520b(1)(b); MSA 28.788(2)(1)(b). We affirm.

The victim in this case was a fifteen-year-old runaway from a juvenile facility. She testified that in the early morning hours of June 25, 1990, defendant, an off-duty Detroit police officer, used his authority as a police officer to take her to a hotel, where he sexually assaulted her under threat of injury. The victim testified that no one else was present in the room at the time of the assault.

Defendant testified that after his shift ended on June 25, 1990, he picked up a female friend, Kim Watkins, from a restaurant and agreed to drive her home. Defendant stated that on the way he picked up the victim in the parking lot of another restaurant after Watkins identified her as a friend. It was defendant's testimony that the victim suggested that the threesome get a room in a motel. Defendant claimed that once at the motel he merely watched as Watkins and the victim fondled each other. According to defendant, once the victim found out that he was a police officer, she became upset and wanted to leave. The three then left the motel, and defendant dropped off the victim at her requested destination.

Kim Watkins denied that she was present at a hotel room with defendant and the victim. She testified that on the day after the incident, defendant came to her home and stated that he needed her help. Defendant told her that he had had sex with the victim at a motel and that now she was accusing him of rape. He asked her to go to an internal affairs investigation with him and state that she had been with defendant when he picked up the victim and that she participated in the

consensual sexual activity at the motel. Watkins made such a statement, but later retracted it.

Two other witnesses testified that they saw the victim in a gas station parking lot on the evening of the assault and gave her a ride. On the way to their destination, they stopped at the home of one of the witnesses. While they were in the driveway, a car pulled up and defendant approached their vehicle. One of the witnesses testified that defendant identified himself as a police officer and stated that the victim would have to come with him because she was a runaway.[1]

On appeal, defendant argues that he was denied his right to a fair trial because the trial court permitted the prosecution, over defense counsel's objection, to question defendant on cross-examination about his refusal to make a statement after receiving *Miranda*[2] warnings.

The Due Process Clause of the Fourteenth Amendment prohibits the use of postarrest, post-*Miranda* silence to impeach a defendant's exculpatory story at trial. *Doyle v Ohio,* 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976); *People v Sutton (After Remand),* 436 Mich 575, 592; 464 NW2d 276 (1990) (opinion by BOYLE, J.). However, this general rule is inapplicable where a defendant claims to have told the police the same version of the exculpatory story upon arrest. *Id.* at 593. Citing *United States v Fairchild,* 505 F2d 1378 (CA 5, 1975), the *Doyle* Court made the following distinction:

> It goes almost without saying that the fact of post-arrest silence could be used by the prosecu-

---

[1] This testimony was consistent with the victim's version of how she came to be with defendant on the night of the assault.

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

tion to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest. [*Doyle, supra* at 619, n 11.]

In this case, defendant did not claim to have told the police the same version of the exculpatory story that was presented at trial. However, defendant, through his direct testimony, attempted to give the jury the impression that he had cooperated fully with the authorities.

Defendant testified as follows during his direct examination:

*Q.* Do you know that you're charged with the rape of a juvenile; you understand that?

*A.* Yes.

*Q.* And the accusation is that you had sex with her vaginally?

*A.* Yes, I understand that.

*Q.* And is that true?

*A.* Of course not.

*Q.* Did you have—Go ahead.

*A.* I just want to say that I don't know if it was brought up in this trial, but as you know and even against your own will and you're my attorney, I told you when this thing first started I voluntarily said I'll do anything that they ask. If they want to take blood samples or hair samples or whatever they want to do, if they want to take the car, if they want me to take any type of test, I took 'em even against your objections because I knew that no test would be found that I had not touched her or Kim that night and I had nothing to hide from that.

*Q.* Did you submit hair?

*A.* Yes, I did.

*Q.* Semen?

*A.* Yes.

*Q.* Blood?

*A.* Yes.

*Q.* Saliva?

*A.* Yes.

*Q.* Anything else?

*A.* It was whatever was going on at the time. Whatever they asked me to do, I did it voluntarily.

*Q.* All right. And with regard to another count that you're charged with, you know you're charged with having sex with this juvenile and having anal sex with her. How do you answer to that charge?

*A.* Again, I voluntarily—I took whatever test they had. The whole thing was I was gonna just watch these two women go at it, that's the only intention I had. When they got to about this money deal and all this other stuff, I said I'm out of here.

*Q.* All right. You know what the other allegation is. The other allegation is that you forced [the victim] to perform fellatio or oral sex on you.

*A.* Again, and as Investigator Clark know [sic], I volunteered 100 percent, I gave whatever they wanted.

At this point the prosecutor asked that the jury be excused and expressed his intention to cross-examine defendant regarding his failure to make a statement to the police after receiving *Miranda* warnings. Over defense counsel's objection, the trial court ruled that defendant had opened the door, because a fair implication to be drawn from defendant's testimony was that he had cooperated in all ways with the investigation in this case.

In *United States v Fairchild, supra* at 1383, the defense attorney asked one of the investigating officers in the case: "During the period of time that this investigation has been going on, to your knowledge has Mr. Fairchild cooperated fully with

the FBI and U.S. attorney's office in responding with anything that you all wanted?" Subsequently, the trial court allowed cross-examination of the defendant regarding his postarrest, post-*Miranda* silence. The court noted that evidence of a defendant's silence after receiving *Miranda* warnings is excluded for the purpose of protecting certain rights of the defendant, not so that the defendant may freely and falsely create the impression that he has cooperated with the police when in fact he has not. The court determined that once the defendant had raised the issue of his cooperation with law enforcement authorities, he had opened the door to a full, not just a selective, development of that subject. *Id.*

We agree with the trial court that in this case defendant opened the door to the cross-examination. Defendant's testimony on direct examination created the impression of general cooperation with the authorities. The prosecution properly was permitted to pursue a full development of the question of defendant's cooperation and to elicit testimony of defendant's post-*Miranda* silence to rebut the impression of full cooperation. *Fairchild, supra.* The fact that defendant did not actually testify that he made a statement at the time of arrest or after receiving *Miranda* warnings does not change our conclusion in this regard. *United States v Shue,* 766 F2d 1122, 1129 (CA 7, 1985), aff'd 825 F2d 1111 (CA 7, 1987), cert den 484 US 956 (1987). Accordingly, we conclude that the prosecution's cross-examination was not improper.

Furthermore, we believe that the prosecution properly commented on defendant's exercise of his right to remain silent during closing argument. The prosecutor did not attempt to use this evidence as direct evidence of defendant's guilt. Compare *Fairchild, supra* at 1383; *Shue, supra* at 1130.

Rather, he pointed out to the jurors that in assessing the credibility of the witnesses, they should remember that defendant testified that he had fully cooperated with the police, when in fact he had not.

Lastly, we conclude that even if the prosecutor's questions and comments regarding defendant's silence were improper, any error was harmless, and reversal is not required. *People v Gilbert,* 183 Mich App 741, 747; 455 NW2d 731 (1990). This case was not simply a credibility contest between defendant and the victim. Defendant's version of the events was also contradicted by the testimony of Kim Watkins, who stated that defendant asked her to lie for him, and by the testimony of two other witnesses who contradicted defendant's explanation of how the victim came to be with him that evening.

Affirmed.