UNITED STATES of America, Plaintiff,

v.

Elizabeth Nichols CHAGRA, Defendant.

No. SA–82–CR–57(4).

United States District Court,
W.D. Texas,
San Antonio Division.

Feb. 26, 1986.

W. Ray Jahn, Asst. U.S. Atty., San Antonio, Tex., for plaintiff.

Larry Zinn, Warren Burnett, San Antonio, Tex., for defendant.

## MEMORANDUM OPINION

SESSIONS, Chief Judge.

ON THIS DATE came on to be considered the motion of the Defendant, Elizabeth Nichols Chagra, to dismiss the superseding indictment in the above-styled and numbered cause, and to dismiss the original indictment.

## I

### INTRODUCTION

On December 13, 1985, the Defendant filed a motion to dismiss both the original and superseding indictments in the above-styled and numbered cause. On December 23, 1985, the Government filed a terse response. After reviewing the originally submitted briefs, on January 8, 1986, the Court ordered that the Government and Defendant submit supplemental briefs. On January 13, 1986, the Defendant and Government filed supplemental briefs. On January 31, 1986, the Court entered an Order denying the Defendant's motion to dismiss the superseding and original indictments in the above-styled and numbered cause. This memorandum opinion details the Court's analysis of the issues raised by the Defendant in her motion to dismiss and the Court's resolution thereof.

## II

### PROSECUTORIAL VINDICTIVENESS

Defendant argues first that the original and superseding indictments should be dismissed due to prosecutorial misconduct. Defendant's entire argument is set forth below:

> The superseding indictment is a product of prosecutorial misconduct in that the prosecution sought to deny Defendant a speedy trial. Because this error infects the entire proceeding, Defendant seeks dismissal of all pending indictments.

*Defendant's Motion to Dismiss Indictments* at 2. In support of the motion to dismiss based upon prosecutorial misconduct, Defendant's brief in its entirety states only that "defendant relies on the Sixth Amendment of the United States Constitution." *Defendant's Supplemental Brief in Support of the Motion to Dismiss Indictments* at 3–4. Finally, at the January 8, 1986 hearing on pending motions, the Defendant additionally advanced the argument that the motion to dismiss indictments should be granted because the superseding indictment requires a lesser quantum of proof.

The Sixth Amendment to the United States Constitution provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The Court is puzzled by the Defendant's citation of the Sixth Amendment to support her claims that the indictment should be dismissed for prosecutorial misconduct. To the extent that Defendant argues a violation of her speedy trial right under the Constitution or the United States Code, 18 U.S.C. § 3161 *et seq.*, the Court addressed those concerns in its Order entered January 6, 1986, where the Court granted Defendant's motion for a speedy trial, subject only to the statutory guidelines mandated by 18 U.S.C. § 3161 *et seq.* As the Court has granted Defendant's motion for a speedy trial, the Court will deny the motion to dismiss based upon the speculative claim, unsubstantiated by any evidence, that the Government sought to delay Defendant's trial by returning the superseding indictment.

Defendant also argued at the January 8, 1986 motions hearing that the Court should find the Government guilty of prosecutorial vindictiveness because it caused a superseding indictment to be returned that contained a lesser included offense which allegedly would be easier for the Government to prove. At the hearing, Defendant's counsel sought to establish in cross-examination of Assistant United States Attorney Ray Jahn that the quantum of proof required by the charges in the superseding indictment was less than that required by the original indictment, because conspiracy to commit second degree murder does not require a finding of premeditation. Although Defendant's counsel failed to develop this point, the Court believes that Defendant argues that the prosecution's exercise of discretion in bringing a lesser included offense is vindictive because it is more likely to result in conviction. To the extent that Defendant makes this argument, the Court believes it is more properly urged under the Fifth Amendment due process clause, and not the Sixth Amendment as urged in her brief. *See* Comment, *Two Models of Prosecutorial Vindictiveness,* 17 Ga.L.Rev. 467 (1983); *see also United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *United States v. Cole,* 755 F.2d 748 (11th Cir.1985); *United States v. Chagra,* 669 F.2d 241 (5th Cir.), *reh'g denied,* 673 F.2d 1321, *cert. denied,* 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982).

■ The constitutional authority to "take care that the laws [are] faithfully executed" is a substantive matter textually committed in the Constitution to the executive branch, U.S. Const. art. II, § 3; *United States v. Hamm,* 659 F.2d 624, 628 (5th Cir.1981) (*en banc*), and the authority of the executive branch to enforce the law in a selective fashion is not subject to legal challenge absent proof by the defendant that the Government has exercised its discretion upon an invidious basis such as race. *United States v. Batchelder,* 442 U.S. 114, 123–25 & n. 9, 99 S.Ct. 2198, 2204 & n. 9, 60 L.Ed.2d 755 (1979); *Bordenkircher v. Hayes, supra,* 434 U.S. at 364, 98 S.Ct. at 668–69 (1978); *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); Comment, *Two Models of Prosecutorial Vindictiveness, supra* at 482–85.

■ As a procedural matter, the Government may obtain a superseding indictment against a defendant at any time prior to trial, and may select the indictment under which to proceed at trial. *United States v. Stricklin,* 591 F.2d 1112, 1115 n. 1 (5th Cir.), *reh'g denied,* 598 F.2d 620 (*en banc*), *cert. denied,* 444 U.S. 963, 100 S.Ct.

449, 62 L.Ed.2d 375 (1979) (collecting cases). At the same time, however, the Government may not exercise its prosecutorial authority in order to punish a defendant in retaliation for his exercise of his rights rather than to further a legitimate law enforcement interest. *Blackledge v. Perry, supra; United States v. Chagra, supra; United States v. Walker,* 514 F.Supp. 294, 311–13, 316–23 (E.D.La.1981). The due process clause establishes this limitation on the Government's charging authority as part of the principle forbidding the Government from imposing punishment upon innocent conduct. *United States v. Walker, supra,* at 316–19.

■ The Government's decision to "up the ante" against a defendant by filing new charges after he has taken some step in his defense may constitute an impermissible punishment in some cases, *see, e.g., Blackledge v. Perry, supra,* but the Government may proceed with its new charges where the purpose for its charging decision can be traced to a legitimate, non-vindictive rationale, such as the discovery of a new witness or a different approach to a case by a new prosecutor. *See United States v. Phillips,* 664 F.2d 971, 996–97 (5th Cir. 1981); *Hardwick v. Doolittle,* 558 F.2d 292, 301 (5th Cir.), *supplemented on petition for reh'g and reh'g en banc,* 561 F.2d 630 (1977), *cert. denied,* 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978); *United States v. Chagra, supra* at 247–48. To show prosecutorial vindictiveness in-fact, the Defendant must establish the prosecutor's state of mind and must demonstrate that, but for vindictiveness on the part of the prosecutor, the extra prosecutorial activity would not have been undertaken. *See* Comment, *Two Models of Prosecutorial Vindictiveness, supra* at 483–84.

■ At the January 8, 1986 hearing on the motion to dismiss the indictments, the Defendant did not call any witnesses to support its motion, but instead relied upon cross-examination of prosecutor Ray Jahn. On direct examination, Mr. Jahn testified that the purpose of re-indicting Defendant Elizabeth Chagra was to add three overt acts to conform the indictment to the evidence adduced at the first trial and to delete the premeditation allegation based upon the reversal by the Fifth Circuit of Defendant Chagra's original conviction. In addition, Mr. Jahn testified that the Government believed that a lesser crime was charged because it was a lesser included offense, and that the Government's decision to re-indict was in no way meant to deprive Mrs. Chagra of her speedy trial, and would probably result in a shorter trial.

On cross-examination, Defendant's counsel Warren Burnett suggested that the superseding indictment would lessen the quantum of proof required of the Government several years after the initial indictment. Although Mr. Jahn admitted that the superseding indictment changed the quantum of proof, he refused to admit that it lessened it, but rather argued that the change only was a matter of degree, *i.e.,* from first degree to second degree murder. Furthermore, Mr. Jahn stated that the purpose of returning the superseding indictment was to avoid confusing the jury on the issue of premeditation, as the Government did not intend to try to prove premeditation.

Even if this Court were to reject the Fifth Circuit's more limited in-fact theory of prosecutorial vindictiveness, *see United States v. Chagra, supra,* for the most liberal approach used by the courts, the Court would find no prosecutorial vindictiveness. The more liberal "apprehension model" theory of prosecutorial vindictiveness is based upon the assumption that due process prohibits not only prosecutorial vindictiveness in fact, but also the mere appearance of vindictiveness. *See* Comment, *Two Models of Prosecutorial Vindictiveness, supra* at 479–82. This model is based upon the assumption that if the prosecutor appears to be vindictive, a defendant may be deterred from exercising his rights. *Id.* at 479–80.

In order to establish a *prima facie* case of prosecutorial vindictiveness under the "apprehension model," a defendant must show hostile prosecutorial activity, such as

obtaining a superseding indictment exposing the defendant to a risk of greater punishment, following the exercise of a right. *Id.* at 480–81. The Defendant fails to establish even this more liberal standard; Defendant's potential exposure to punishment under either indictment is "for any term of years or for life." *See* 18 U.S.C. § 1117. While the quantum of proof necessary against the Defendant may, in fact, have been lessened, and therefore, the possibility of her conviction increased, the Government simply does not seek a greater punishment. The Government merely seeks to conform its evidence and the indictment to the standards set forth by the Fifth Circuit in its reversal of Defendant Elizabeth Chagra's original conviction. *See United States v. Harrelson,* 754 F.2d 1153 (5th Cir.), *reh'g denied,* 766 F.2d 186 (*en banc*), *cert. denied,* —— U.S. ——, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985).

Based upon the Court's review of the evidence and the argument of counsel, the Court is of the opinion that the Government's decision to obtain a superseding indictment was not caused by Defendant Elizabeth Chagra's exercise of her right to appeal her conviction. Furthermore, the Court finds that the Government did not seek a superseding indictment in order to deny Defendant Elizabeth Chagra her speedy trial right. The Government has not even suggested that the superseding indictment should figure into this Court's calculation of Defendant's speedy trial rights pursuant to 18 U.S.C. § 3161, and the Government did not oppose Defendant's motion for a speedy trial, which was granted by this Court. The Court further finds that Defendant Chagra has failed to show the prosecutor's state of mind was to punish her for the exercise of her rights, or to show that, but for vindictiveness on the part of the prosecutor, the superseding indictment would not have been undertaken. *See* Comment, *Two Models of Prosecutorial Vindictiveness, supra.* The decision to seek a superseding indictment was not motivated by vindictiveness or a desire to deny Defendant's speedy trial right, but instead was the product of a legitimate

desire to conform the indictment to the proof adduced at the first trial and to conform the indictment to the quantum of proof that the Government felt it could produce consistent with the Fifth Circuit's reversal and remand of the original conviction in this cause. The Court, accordingly, will deny Defendant's motion to dismiss the original and superseding indictments for prosecutorial misconduct.

## III

### STATUTE OF LIMITATIONS

Defendant also seeks to dismiss the superseding indictment because she asserts it is barred by the statute of limitations. Defendant relies on Title 18, United States Code, Section 3282, which provides that:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. § 3282. Although Defendant fails to fully develop her argument, the Court will accept the Defendant's contention that this is not a capital case controlled by 18 U.S.C. § 3281 (which allows indictment at any time following an offense), but rather a non-capital case controlled by 18 U.S.C. § 3282, for purposes of ruling upon this motion.

The superseding indictment in this case, like the original indictment, charges the Defendant with conspiracy to murder under the provisions of 18 U.S.C. § 1117. The superseding indictment adds no new Defendants and does not charge any new offenses. The only changes from the original indictment are the deletion of the reference to "premeditation," the deletion of object of the conspiracy numbered nine, the deletion of overt acts numbered three and four in the original indictment, and the addition of new overt acts numbered three, four, and five.

It is clear that the statute of limitations presents no obstacle to prosecution

in this case, because the return of an indictment tolls the statute of limitations. *See* 18 U.S.C. § 3282. In this case, the original indictment against Defendant Elizabeth Chagra was returned on April 15, 1982, well within the 5–year period of limitations established by 18 U.S.C. § 3282. The initial indictment was still validly pending when the superseding indictment was returned. As one court has noted, "[s]ince the statute stops running with the bringing of the first indictment, a superseding indictment brought at any time while the first indictment is still validly pending ... cannot be barred by the statute of limitations." *United States v. Grady*, 544 F.2d 598, 600–01 (2d Cir.1976) (cit's omitted); *see also, e.g., United States v. Friedman*, 649 F.2d 199, 204 (3d Cir.1981) ("A superseding indictment returned while the original indictment is validly pending is not barred by the statute of limitations if it does not expand the charges made in the initial indictment."); *United States v. Panebianco*, 543 F.2d 447, 454 (2d Cir.1976); *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977); *United States v. Wilsey*, 458 F.2d 11, 12 (9th Cir.1972).

Since no new charges have been added to the indictment, it cannot be said that the superseding indictment has expanded the charges against Defendant. In fact, the indictment reduces the charges by alleging a violation of a lesser included offense. Furthermore, until the mandate issued from the Court of Appeals, the Government did not have jurisdiction to file a superseding indictment, and thus the Government cannot be accused of delaying the return of the superseding indictment. After due consideration of Defendant's motion to dismiss the superseding indictment based upon a violation of the statute of limitations, the Court is of the opinion that same should be denied.

## IV

### FAILURE TO ALLEGE AN OFFENSE

#### A. *Introduction*

■ Defendant's final and most persuasive argument is that the superseding indictment should be dismissed for failure to allege an offense; in that conspiracy to commit second degree murder is a logical impossibility. Although the Court is unable to find a motion to dismiss case that is factually analogous, the Court is guided and persuaded by numerous cases that hold that granting a motion to dismiss is within the sound discretion of the trial court, and such discretion is exercised only in those cases where dismissal is clearly appropriate. As one court has stated:

> Because the separation of powers doctrine 'mandates judicial respect for the independence both of' the prosecutor and the grand jury, *United States v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1391 (9th Cir.1983), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984), our review of an indictment is limited.... There must be 'a clear basis in fact and law' for a court to invoke its supervisory powers to dismiss an indictment. *United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir.), *cert. denied*, 434 U.S. 835, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977).

*United States v. McClintock*, 748 F.2d 1278, 1283–84 (9th Cir.1984), *cert. denied*, — U.S. ——, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985). Further, as the Eleventh Circuit has noted, the "district court should approach with delicacy and circumspection the question of whether to dismiss a case on the ground that" the indictment fails to allege an offense. *United States v. Coia*, 719 F.2d 1120, 1125, (11th Cir.1983), *reh'g denied*, 724 F.2d 978 (1984), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984). Finally, the Court notes, in particular, the Second Circuit's admonition that "dismissal of an indictment [will be upheld] only in very limited and extreme circumstances.... [T]he sanction is so drastic that, especially where serious criminal conduct is involved, it must be reserved for the truly extreme cases." *United States v. Broward*, 594 F.2d 345, 351 (2d Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979).

As an initial matter, the Court notes that Defendant does not cite this Court any case, statute, or any legislative history that would preclude the Government from charging conspiracy to commit second degree murder. Rather, the Defendant argues that conspiracy to commit second degree murder is a logical impossibility, *see Defendant's Supplemental Brief in Support of Motion to Dismiss Indictments* at 15, and then asks that the Court dismiss the indictment because congressional intent, as evidenced by the statutes and the legislative history, is silent on whether this offense may be charged.

In its opinion reversing Defendant Elizabeth Chagra's original conviction in this case, the Fifth Circuit held that 18 U.S.C. § 1117 incorporates the elements of both Section 1114 and 1111 of Title 18. *See United States v. Harrelson, supra,* at 1171–73. In particular, the Fifth Circuit held that since the Government had charged premeditated murder, Section 1117 incorporated all of the elements of first degree murder as set forth in Section 1111, including premeditation. *Id.* Implicit in the *Harrelson* Court's holding that Section 1117 may incorporate Section 1111's substantive first degree murder offense is a further finding that Section 1117 may also incorporate the substantive offense of second degree murder found in Section 1111. *Id.* at 1173 ("Rather, particular offenses are invariably defined by reference to §§ 1111 and 1112."). Although this Court does not believe that the Defendant has shown that there is a "clear basis in fact and law," *see United States v. McClintock, supra* at 1284, for dismissal of the superseding indictment, the Court will address the issues raised by the Defendant because of the importance of the right of a defendant to be properly charged in an indictment. *See* Fed.R.Crim.P. 7(c).

The Court fails to find any precise guidance on the test that it should use in determining Defendant's Motion to Dismiss for Failure to Allege an Offense. The Court believes that while the Federal Rules of Criminal Procedure do not set forth a precise standard, the Federal Rules of Civil Procedure should provide a persuasive analytical framework. In this respect, the Court finds that a motion to dismiss an indictment for failure to allege an offense is most analogous to a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6).

In deciding a motion to dismiss under 12(b)(6), a court must accept as true all those facts alleged in the complaint (hence indictment); *see Williamson v. Tucker,* 645 F.2d 404, 412–15 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *see also United States v. Russell,* 415 F.Supp. 9, 10 (W.D.Tex.1975) (In the criminal context, a motion to dismiss based upon the sufficiency of the indictment requires the Court to accept as true all the allegations contained in the indictment); and "a complaint [hence indictment] should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Based upon the foregoing analysis, the Court will accept as true all the facts pled by the Government in the indictment, and will grant Defendant Elizabeth Chagra's motion to Dismiss the Complaint for Failure to Allege an Offense only if the Government can prove no set of facts to support a conviction.

Defendant argues that it is absurd to believe that "Congress created an offense to punish what logically cannot happen— the concerted planning (conspiracy) of an unplannable crime (second degree murder)." *Defendant's Supplemental Brief in Support of Motion to Dismiss Indictments* at 15. Although Defendant's argument appears plausible at first glance, after a closer analysis, this Court is not persuaded that conspiracy to commit second degree murder is illogical or that Congress did not intend that this crime be charged. Two basic premises underlie Defendant's argument. First, Defendant presumes that conspiracy is a "concerted plan" to accom-

plish an unlawful end. *Id.* Second, Defendant presumes that second degree murder is definable solely as "an unplannable crime" of passion. *Id.* If either of Defendant's two premises is false, then Defendant's argument must fail under logical analysis. Since this Court finds both of Defendant's premises false, the Court rejects the Defendant's argument and finds that the superseding indictment correctly states an actionable charge of conspiracy to commit second degree murder.

### B. *Statutes*

The charge in the instant cause arise from the incorporation and interplay between three separate United States Code sections. *See United States v. Harrelson, supra* at 1171–74. Title 18, United States Code, Section 1117 provides that:

> If two or more persons conspire to violate section 1111, 1114, or 1116 of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

18 U.S.C. § 1117. Section 1114 of Title 18, United States Code, provides in part that:

> Whoever kills or attempts to kill any judge of the United States, ... engaged in or on account of the performance of his official duties, ... shall be punished as provided under sections 1111 and 1112 of this title.

18 U.S.C. § 1114. Section 1111 of Title 18, United States Code, provides that:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
>
> Any other murder is murder in the second degree.

18 U.S.C. § 1111. The federal murder statute, 18 U.S.C. § 1111, is a codification of common law murder. *United States v. Shaw,* 701 F.2d 367, 392 (5th Cir.), *supplemented on petition for reh'g and reh'g en banc,* 714 F.2d 544 (1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984).

### C. *Murder*

#### 1. History

A historical perspective is quite helpful in determining the nature of the factors that distinguish first and second degree murder, because of the unique nature of the development of the crime of murder in Anglo-American jurisprudence. Murder is a common law crime, created by the English judges rather than by the English Parliament. *See* W. LaFave & A. Scott, *Criminal Law* § 67 *et seq.* (hereinafter cited "LaFave & Scott, *supra* at § ——"); *see also* Moreland, *The Law of Homicide* (1952); Wechsler & Michael, *A Rationale of the Law of Homicide,* 37 Colum.L.Rev. 701, 1261 (1937); Perkins, *The Law of Homicide,* 36 J.Crim.L. & Crim. 391 (1946); Model Penal Code, art. 201, Comment (Tent. Draft. No. 9, 1959). Prior to the mid–1500's, the English judges took a fairly literal view of "malice aforethought," requiring an intent to kill plus an element of hatred, spite or ill-will, with the intent thought out in advance of the killing. LaFave & Scott, *supra* at § 67. In the mid–1500's, English statutes made it murder to intentionally kill another by poisoning or lying in wait, or to kill another in any situation evidencing a premeditated, planned killing. *Id.* Thus, by the mid–1500's "malice aforethought" had come to mean a premeditated previously thought-out intent to kill another; in effect, the courts gave a literal reading to the words "malice aforethought." *Id.*

Between the 1500's and the early 1800's, the English judges expanded the boundaries of murder to include intentionally killing a person in a heat of passion aroused

by the victim, though it was held to be manslaughter if the defendant's passion was reasonable and the defendant should not have cooled off in the interval between the provocation and the defendant's act. *Id.* In this way, the rigid requirement of premeditation in malice aforethought began to be slowly dropped. *Id.; see also* Moreland, *The Law of Homicide*, chs. 1–3 (1952). This trend increased with the introduction of felony murder, *i.e.*, any killing whether intentional or unintentional during the conduct of certain felonies such as arson. LaFave & Scott, *supra* at § 67. The boundaries of murder were further expanded by including killings where a defendant unintentionally killed another person while conducting himself in an extremely negligent way, the so-called "depraved-heart murder." Finally, Anglo-American judges further diluted the premeditation element of "malice aforethought" by including within the definition of murder any killing that resulted from an attack where the defendant intended to do serious bodily injury short of death, which nevertheless resulted in death. *Id.*

Common law murder, therefore, divides unlawful homicides into two classes, murder and manslaughter, depending on whether the killing was with or without malice aforethought. Although the term "malice aforethought" was most probably intended to be applied literally when it was first introduced into the law of homicide, as the analysis above indicates, the courts soon converted it into a term of art. The courts thereby shifted the focus of analysis of murder from the popular understanding of a subjective standard, which inquired into the state of mind of the actor, to an objective standard by which the courts found certain conduct, including negligence, tantamount to recklessness, sufficient to find the culpable state of mind for murder. *See Austin v. United States*, 382 F.2d 129, 133 (D.C.Cir.1967); *Hemphill v. United States*, 402 F.2d 187 (D.C.Cir.1968). This objective standard persists in the law today, *Austin v. United States, supra*, but this Court's focus is not so much on the extension of "malice" as the virtual elimi-

nation by the courts of the literal significance of the word "aforethought."

By the dawn of the 19th century, the courts had expanded the concept of common law murder to include intent-to-kill murder, a killing in the heat of passion, a killing during the perpetration of a felony, a killing resulting from an intention to do serious bodily injury, and even an unintentional killing that resulted from extreme negligence manifesting a "depraved-heart." The common law courts had thus blurred the myriad states-of-mind and intents required to find murder which ranged from cool and calculated to merely impulsive. *See* LaFave & Scott, *supra* at § 67; *Austin v. United States, supra* at 133; Holmes, *The Common Law*, 51–63 (1938 ed.).

This expansion of the definition of murder, and consequently the expansion of the instances where capital punishment could be imposed, concerned many people. A reform movement eventually led to a new approach, and in 1794 the Pennsylvania State Legislature passed a law that separated murder into two degrees, reserving the death penalty for the first degree because the reformers believed the death penalty should be imposed only where clear intent and culpability were shown. *See Austin v. United States, supra* at 133. These reform statutes generally defined murder in the first degree as an intentional killing, accompanied by premeditation and deliberation, as well as malice aforethought; murder in the second degree was defined to include all other intentional killings with malice aforethought. *Id.* at 133–134; LaFave & Scott, *supra* at § 67.

The current federal murder statute, 18 U.S.C. § 1111, and the murder statute for the District of Columbia passed by Congress in 1901 (still in effect today), are both modeled after the classic first and second degree pattern. *See* LaFave & Scott, *supra* at § 73. First degree murder also usually includes "felony murder," where the felony in question is one of four or five listed felonies, generally including rape,

robbery, arson and burglary, and murder perpetrated by poison or lying in wait. *Id.*

### 2. First Degree Murder

■ First degree murder requires not only an intent to kill ("malice aforethought"), but in addition the defendant must premeditate the killing and deliberate about it. While it is difficult to give a meaningful definition of "premeditation" and "deliberation" as they are used in connection with first degree murder, "deliberation" is generally defined as requiring a cool mind that is capable of reflection, and "premeditation" is usually defined as requiring that the one with the cool mind did in fact reflect, at least for a short period of time, before his act of killing. LaFave & Scott, *supra* at § 73; *Austin v. United States, supra.* "Malice aforethought," which is required both for first *and* second degree murder, generally requires an intent, at the time of a killing, or as in this case, at the time of the conspiratorial agreement, to willfully take the life of a human being, or to intentionally and willfully act in callous and wanton disregard of the consequences to human life. *See* Court's charge in the original trial of this cause; *United States v. McRae*, 593 F.2d 700 (5th Cir.), *reh'g denied*, 597 F.2d 283 (*en banc*), *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979).

This hierarchy of culpability, with its requirement of different states of mind for first and second degree murder, reflects a value judgment by Congress and state legislatures that certain types of killings are more heinous than others. As the Court of Appeals for District of Columbia Circuit has noted:

> Statutes like ours, which distinguish deliberate and premeditated murder from other murder, reflect the belief that one who meditates an intent to kill and then deliberately executes it is more dangerous, more culpable or less capable of reformation than one who kills on sudden impulse; or that the prospect of the death penalty is more likely to deter men from deliberate than from impulsive

murder. The deliberate killer is guilty of first degree murder; the impulsive killer is not.

*Austin v. United States, supra* at 134; *quoting with approval Bullock v. United States*, 122 F.2d 213, 214 (D.C.Cir.1941). Thus, while first and second degree murder are separate crimes, they are not separate because the actions of the murderers are different and reflect distinct crimes. Rather, first and second degree murder are the same crime (intentional killing) committed by actors with such distinct states of mind that legislatures have created two categories of the same crime to compel judicial recognition of the two levels of culpability.

### 3. Factual Distinctions Between First and Second Degree Murder

While some courts have earnestly tried to apply this legislative distinction between first and second degree murder by interpreting "deliberation" to call for elements that the word normally signifies (*i.e.*, that the determination to kill was reached calmly and in cold blood rather than under impulse or the heat of passion and was reached at some appreciable time prior to homicide), the more widespread judicial tendency is marked by a restrictive reading of the statutory terms. *Austin v. United States, supra* at 134. As one commentator notes, the "statutory scheme was apparently intended to limit administrative discretion in the selection of capital cases. As so frequently occurs, the discretion which the legislator threw out the door was let in the window by the courts." Wechsler & Michael, *A Rationale of the Law of Murder*, 37 Colum.L.Rev. 701, 709 (1937). The nullification of the distinction between first and second degree murder, due in large part to judicial attenuation of premeditation and deliberation, was attacked by Mr. Justice Cardozo in a speech given before he joined the Supreme Court:

> There can be no intent unless there is a choice, yet ... the choice without more is enough to justify the inference that the intent was deliberate and premeditated. The presence of a sudden impulse is set to mark the dividing line, but how can an

impulse be anything but sudden when the time for its formation is measured by the lapse of seconds? Yet the decisions are to the effect that seconds may be enough ... The present distinction is so obscure that no jury hearing it for the first time can fairly be expected to assimilate and understand it. I am not at all sure that I understand it myself after trying to apply it for many years and after diligent study of what has been written in the books. Upon the basis of this fine distinction with its obscure and mystifying phraseology, scores of men have gone to their death.

B. Cardozo, *"What Medicine Can Do for the Law"*, reprinted in *Law and Literature,* 70, 96–101 (1931).

The courts responded to Justice Cardozo's challenge, and the trend in the decisions has clearly been towards recognizing the clear legislative intent to distinguish between a cool and reflective mind that did reflect before the killing, as required by first degree murder, and the more impulsive, yet still intentional, state of mind that characterizes second degree murder and is denominated "malice aforethought." *See, e.g., Austin v. United States, supra; Hemphill v. United States, supra; cf. United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816, *reh'g denied,* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982). Courts that have tried to put "teeth" into the requirement of premeditation have generally focused on the lapse of time between the original intent to kill and the killing itself, which had shrunk to mere seconds, but now is generally required to be some appreciable period of time. *See, e.g., Austin v. United States, supra; United States v. Shaw, supra* at 392–93.

 Although the courts have focused on the lapse of time between the original intent to kill and the killing itself, the crux of the issue of premeditation and deliberation is not the time involved, but rather whether the defendant did engage in the process of reflection and premeditation. *See Austin v. United States, supra* at 136. The Court's charge to the jury must focus

primarily on the Defendant's actual thought processes in terms of meditation upon and conscious weighing of the alternatives. While the lapse of some appreciable time is necessary to show "deliberation," the lapse of time alone is not sufficient to establish deliberation. *Id.* The courts have found that a discussion of whether the lapse of time was appreciable is a meaningful way to convey to a jury the core meaning of premeditation and deliberation. *Id.*

### 4. Factors Bearing Upon Murder State-of-Mind Analysis

There are several factors that the courts look to in determining premeditation; each of these factors at least in part reflect upon the length of time between the point where the actor conceives of the intent to kill and the eventual carrying out of that intent. The three basic categories of evidence used to determine premeditation and deliberation are: (1) facts about how and what the defendant did prior to the actual killing that would show he was engaged in activity directed toward the killing, that is, *planning activity;* (2) facts about the defendant's prior relationship and conduct with the victim from which *motive* may be inferred; and (3) facts about the *nature of the killing* from which it may be inferred that the manner of the killing was so particular and exacting that the defendant must have intentionally killed according to a "preconceived design." LaFave & Scott, *supra* at § 73; *United States v. Blue Thunder,* 604 F.2d 550, 553 (8th Cir.), *cert. denied,* 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979); Annot., 96 A.L.R.2d 1435 (1964).

 A defendant on trial for first degree murder is automatically on trial for second degree murder because it is a "lesser included offense" of first degree murder. *See United States v. Hemphill, supra.* This is because every first degree murder, except felony murder, begins with the intent necessary to prove second degree murder, *i.e.,* malice aforethought, and all of the other elements of the two crimes,

except the quantum of intent, are exactly alike. *Id.* In other words, before someone can premeditate and deliberate upon an intention to kill, he must have the original intent to willfully and intentionally take the life of a human being, reflected by the requirement of first and second degree murder of "malice aforethought." 18 U.S.C. § 1111. Cool reflection for some appreciable period of time prior to the killing ripens the second degree murder intent of malice aforethought into the first degree murder intent of malice aforethought, premeditation and deliberation. Since second degree murder is a lesser included offense of first degree murder, a court must sustain a charge of second degree murder where first degree murder is proven because all of the elements of second degree murder have been shown. *Austin v. United States, supra,* 3 C. Wright, *Federal Practice and Procedure: Criminal* § 515 *et seq.* (2d ed. 1982).

### 5. Second Degree Murder

Second degree murder is defined in a residual fashion, that is to say, second degree murder is all murder that is not first degree murder—premeditated, deliberate and with malice aforethought, or felony murder as specified, or murder by poison, torture, or lying in wait. Defendant argues that second degree murder is an unpremeditated killing, an unplanned murder of passion without adequate cause. *See Defendant's Supplemental Brief in Support of Motion to Dismiss Indictments* at 5–6. Defendant's definition of second degree murder is far too narrow; she errs by focusing on the most obvious form of second degree murder, *i.e.,* an unlawful killing in the sudden heat of passion without adequate provocation. *See, e.g., United States v. Frady,* 456 U.S. 152, 171 n. 18, 102 S.Ct. 1584, 1595 n. 18, 71 L.Ed.2d 816 (1982). Defendant's error results from focusing on those cases that seek to explain first degree murder by defining what it is not—a killing in the sudden heat of passion without adequate provocation. *See, e.g., Annot., 10 A.L.R. 470 (1921) (cases collected).* While the defendant may be correct in stating that "[p]assion negates premeditation," *see Defendant's Supplemental Brief in Support of Motion to Dismiss Indictments* at 6, that is not the only situation where premeditation is absent, or where a court can find malice aforethought sufficient for second degree murder.

It is clear that second degree murder includes at least four categories of unlawful killings. First, intent-to-kill murder without the added ingredients of premeditation and deliberation is second degree murder. Second, intent-to-do-serious-bodily-injury murder is second degree murder whether the intent is premeditated and deliberated or not. Third, depraved-heart murder falls into the second degree murder category regardless of the intent. Finally, felony-murder, where the felony in question is not specifically listed in the first degree murder statute is second degree murder, unless there is premeditation and deliberation raising the act to first degree murder. *See* LaFave & Scott, *supra* at § 73.

### 6. Intent-to-Kill Second Degree Murder

In the instant cause, the Court is primarily concerned with the first type of second degree murder, *i.e.,* intent-to-kill murder without the added ingredients of premeditation and deliberation. Intent-to-kill second degree murder can be subdivided into at least four sub-categories. Defendant Chagra focuses on the first category, unlawful killing in the heat of passion without justification, to the exclusion of all other types of second degree murder, although "heat of passion" murder is only one subcategory of the four categories of intent-to-kill second degree murder. The classic example of second degree murder in the heat of passion is a killing by a disgruntled husband who discovers his wife in bed with her paramour. *See, e.g., Annot., 10 A.L.R. 470 (1921).* Although the law recognizes that certain situations may provoke such passions that the element of premeditation is negated, *see United States v. Frady, supra* at 171 n. 18, 102 S.Ct. 1595 n. 18, 71 L.Ed.2d 816 (1982), courts still find the

culpable intent to kill and malice afore-thought necessary for second degree murder. *See, e.g.,* Annot., 10 A.L.R. 470 (1921).

The second category of second degree intent-to-kill murder is murder on impulse. Murder on impulse is quite similar to murder in the heat of passion, and is often times lumped together with murder in the heat of passion. *See, e.g., United States v. Frady, supra.* Intent-to-kill murder on impulse is also often implicated in murders where the death is caused by recklessness, a separate category of second degree murder. *See, e.g., Wiley v. State,* 19 Ariz. 346, 170 P. 869 (1918). Although intent-to-kill murder on impulse is generally lumped together with other kinds of murder in the case law, it should be analytically considered as a potentially separate form of second degree murder where the evidence shows the defendant acted on impulse, but without provocation (heat of passion) or premeditation (first degree murder).

The third category of intent-to-kill second degree murder is murder perpetrated while the actor suffered from diminished capacity. The federal cases of this type usually involve drunk Indians, who the courts have found were unable to deliberate and premeditate, and therefore were not guilty of first degree murder. *See, e.g., United States v. Black Elk,* 579 F.2d 49, 51 (8th Cir.1978); *United States v. Celestine,* 510 F.2d 457, 459 (9th Cir.1975). The courts allow this limited defense of diminished capacity based upon the assumption that the intoxicants prevent the actor from engaging in the "cool reflection" necessary for first degree murder. *Cf. Kane v. United States,* 399 F.2d 730, 736–37 (9th Cir. 1968), *cert. denied,* 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969).

The fourth category of intent-to-kill second degree murder is compelled not only by logic and analysis, but also by practical considerations. For lack of a better name, the Court will refer to this fourth category as intent-to-kill murder where the Government is unable to prove premeditation and deliberation. As noted earlier, several types of evidence bear on the issue of premeditation. Despite diligent attempts, the Government's attorneys are often unable to prove beyond a reasonable doubt the cool reflection of premeditation and deliberation for some appreciable time, while they are able to prove malice aforethought. Such was the case in *Hemphill v. United States,* 402 F.2d 187 (D.C.Cir.1968). Although the *Hemphill* court found some evidence of premeditation, the court refused to "close the gaps in [the Government's] proof." *Id.* at 191. In particular, the *Hemphill* court was unable to discern any rational explanation for the defendant's conduct, such as the heat of passion or diminished capacity. Rather, the court found that where the Government is simply unable to prove premeditation and deliberation, but is able to prove "malice aforethought," a conviction for second degree murder will be upheld. *Id.*

This Court finds the *Hemphill* rationale especially persuasive in the cause before the Court. The very nature of conspiracy is secrecy, and such secrecy may act to prevent the Government from proving the additional elements of premeditation and deliberation that might raise second degree murder to first degree murder. A charge of conspiracy to commit second degree murder does not necessarily mean that the actor has conspired to commit a murder in the heat of passion by entering the agreement in the heat of passion, but may simply mean that the Government is unable to prove the elements of premeditation and deliberation beyond a reasonable doubt due to the exigencies of the factual circumstances.

The conclusion that conspiracy to commit second degree murder may be charged where the Government believes the evidence may not quite satisfy the reasonable doubt standard for conspiracy to commit first degree murder is further supported by the fact that the maximum penalty under the conspiracy statute, 18 U.S.C. § 1117, is the same as the maximum penalty allowable under 18 U.S.C. § 1111 for second degree murder, since the federal criminal code generally prescribes penalties for con-

spiracy that are equivalent to the substantive underlying offenses. *See, e.g.,* 21 U.S.C. § 963 ("Any person who ... conspires to commit any offense ... is punishable by imprisonment ... which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the ... conspiracy.") Thus, the Court finds an analytically distinct category of second degree murder where malice aforethought can be proven, but for whatever reason, the Government cannot prove premeditation and deliberation that raises the level of culpability from second to first degree murder, and thus an analytically separate category for conspiracy to commit such second degree murder.

### 7. Intent-to-do-Serious-Bodily-Injury Second Degree Murder

■ As the Court noted earlier, in order to grant Defendant's motion to dismiss the superseding indictment, the Court must accept as true the Government's allegation of the facts, and it must find that the Government cannot prove any set of facts that would support a conviction pursuant to the indictment as returned. *See* discussion at Section IV.A., *supra.* As the Defendant herself noted, "[a]n intent to kill is not required in second degree murder; an intent of recklessness can suffice." *See Defendant's Supplemental Brief in Support of Motion to Dismiss Indictments* at 5, citing with approval, *United States v. Shaw, supra* at 392 n. 20 (Discharge of a gun into a car passing on the highway may show a heart that was without regard for the life and safety of others and therefore guilty of second degree murder.), and *United States v. Fleming,* 739 F.2d 945, 947–48 (4th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 970, 83 L.Ed.2d 973 (1985) (Terribly negligent high-speed driving of a car while intoxicated evidenced conduct that was so reckless and wanton and such a gross deviation from a reasonable standard of care, and of such a nature that the jury was warranted in returning a conviction of second degree murder, since the defendant

was aware of a serious risk of death or serious bodily harm.).

In this case, the evidence could very well show that Defendant Elizabeth Chagra was aware of her husband's dangerous and violent tendencies, and that her encouragement of his stated intent to murder Judge Wood demonstrated conduct which was so reckless, so wanton and such a gross deviation from a reasonable standard of care that a jury could find her guilty of conspiracy to commit intent-to-do-serious-bodily-injury harm murder of Judge John H. Wood, Jr. Intent-to-do-serious-bodily-injury murder may involve advance planning, yet would not rise to the level of first degree murder. LaFave & Scott, *supra* at § 73, n. 53. The possibility that the Government might prove Defendant Elizabeth Chagra guilty of intent-to-do-serious-bodily-injury second degree murder further rebuts the Defendant's argument that conspiracy to commit second degree murder is a logical impossibility (because second degree murder is necessarily an unplanned crime), as this analysis suggests yet another possible set of facts the Government could prove to support a conviction. *See* discussion at Section IV.A., *supra.*

### 8. Murder Summary

The Court's lengthy discussion establishes the falsity of Defendant Elizabeth Chagra's premise that second degree murder is necessarily an unplanned killing committed in the heat of passion. Defendant Chagra seeks to confuse the issue by shifting the focus of the analysis from the intent necessary in conspiracy to commit second degree murder to the nature of the factual circumstances surrounding certain types of second degree murder, including murder in the heat of passion. As the Court noted, however, there are at least two instances in which it is analytically consistent to find planning as a part of second degree murder. The evidence could show Defendant Chagra guilty of conspiracy to commit intent-to-do-serious-bodily-injury murder where her conduct was so reckless, wanton, and such a gross deviation from a

reasonable standard of care that the jury could find second degree murder. In such a case, any planning would be irrelevant. *See* discussion, *supra.*

■ Second degree murder may also be proven where the Government can prove an intent-to-kill, but for whatever reason cannot prove beyond a reasonable doubt premeditation or deliberation. *See, e.g., Hemphill v. United States, supra.* In such a case, there may be evidence of some planning, but that evidence may not prove beyond a reasonable doubt the element of premeditation and deliberation. *Id.* In the instant cause, the Government's original theory of the case was that Defendant Elizabeth Chagra conspired to commit first degree murder. *See United States v. Harrelson, supra.* Since the reversal of Defendant Chagra's conviction, however, the Government stated that although it believes that Elizabeth Chagra acted with premeditation and deliberation in planning Judge Wood's killing, the Government believes that it can only prove beyond a reasonable doubt that she conspired with malice aforethought to kill Judge John H. Wood, Jr. That set of factual circumstances clearly brings the intent issue of the instant cause within the ambit of second degree murder found by the Court of Appeals for the District of Columbia in *Hemphill v. United States, supra.* Since the Court concludes that there are several types of second degree murder that are not committed in the heat of passion, and has ascertained at least two types of second degree murder that can involve advance planning, the Court finds that Defendant's premise that second degree murder is an unplanned murder in the heat of passion is false.

### D. *Conspiracy*

#### 1. Defendant's Arguments

Defendant's second premise is that conspiracy is a crime that involves a plan. *See Defendant's Supplemental Brief in Support of Motion to Dismiss Indictments* at 7. In support of her argument, the Defendant cites *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) and *United States v. James,* 528 F.2d 999, 1011 (5th Cir.), *reh'g denied,* 532 F.2d 1054, (*en banc*) (1976), for the proposition that "planning" of a crime is an essential element of a conspiracy. Defendant argues that since "planning" of the criminal object of the conspiracy is an established requirement that it is illogical that there can be a "common plan (conspiracy)" to commit a crime that is, by definition, unplannable (second degree murder). *Defendant's Supplemental Brief in Support of Motion to Dismiss Indictments* at 7. The Court rejects the Defendant's argument that "planning" the criminal object of the conspiracy is a requirement for the substantive offense of conspiracy, and finds the Defendant's second premise that conspiracy involves planning false and therefore unpersuasive.

#### 2. Agreement

"Criminal conspiracy today may be defined as an agreement between two or more persons formed for the purpose of committing a crime." P. Marcus, *The Prosecution and Defense of Criminal Conspiracy Cases* § 1.03 (1985) (hereinafter cited as "Marcus, *Criminal Conspiracy*"); *United States v. Saenz,* 747 F.2d 930, 937 (5th Cir.1984), *reh'g denied,* 752 F.2d 646, (*en banc*) (1985); *United States v. Wilkinson,* 601 F.2d 791, 796 (5th Cir. 1979). Despite this deceptively easy definition, the crime of conspiracy creates complex proof issues, raises numerous substantive questions, and is extremely difficult to apply in practice. *See Marcus, Criminal Conspiracy, supra* at § 1.03. As Justice Jackson stated, conspiracy is an "elastic, sprawling and pervasive offense, ... so vague that it almost defies definition [and also] chameleonlike [because it] takes on a special coloration from each of the many independent offenses on which it may be overlaid." *Krulewitch v. United States,* 336 U.S. 440, 445–47, 69 S.Ct. 716, 719–20, 93 L.Ed. 790 (1949). Other learned commentators have noted that "the inherent vagueness of the crime of conspiracy

makes it without exception the most difficult to confine within the boundaries of a definitive statement ..." Harno, *Intent in Criminal Conspiracy*, 89 U.Pa.La.L.Rev. 624 (1941); LaFave & Scott, *supra* at § 61.

This inherent vagueness has led to uncertainty over what is sufficient to constitute the agreement and what attendant mental state must be shown. LaFave & Scott, *supra* at § 61. The reversal of Elizabeth Chagra's original conviction was caused by uncertainty surrounding the requisite state of mind required by the federal conspiracy to murder statute, 18 U.S.C. § 1117. *See United States v. Harrelson, supra*, 754 F.2d 1171–73. Defendant's argument that conspiracy involves planning implicates not only the requisite state of mind, but more importantly the nature of the requirement of an agreement. As Dean Marcus noted:

> The crime of conspiracy is the illegitimate agreement, and the agreement is a crime. In a very real sense the agreement issue is of the greatest practical significance for lawyers, as the agreement is the basis of early criminal liability and is the basis of double prosecutions and double punishment. Further, by itself [the agreement] satisfies the tradition *actus reus* requirement. Without an agreement, there is no crime of conspiracy. Yet, this agreement, to constitute the crime of conspiracy, need not be a formal transaction involving meetings and in-depth communications.... 'The evidence need not show that the alleged members of the conspiracy entered into any express or formal agreement; or that they directly stated between themselves the details of the scheme and its object or purpose, or the precise means by which the object or purpose was to be accomplished.' All the particular elements of the agreement need not ever be set forth. Still, before there is a conspiracy the trier of fact must believe that the defendant was a party to an agreement to commit an unlawful act at some point during the life of the conspiracy. Even though the jury need not be convinced that the defendant knew all the intricate plans of the group, it must be instructed

on the 'crucial element of willful membership.'

Marcus, *Criminal Conspiracy* at § 2.02 (cit.'s omitted), *quoting with approval, United States v. Masiello*, 491 F.Supp. 1154, 1163 (D.S.C.1980).

■ A criminal conspiracy requires an agreement between two or more persons to commit a crime, and an overt act by one of the conspirators to further the agreement. *United States v. Khamis*, 674 F.2d 390, 392 (5th Cir.1982); *see also United States v. Saenz, supra*, 747 F.2d 937; *United States v. Lyons*, 703 F.2d 815, 822 (5th Cir.1983). In order to prove these two elements the evidence must establish that each conspirator knew of the conspiracy, intended to join it, and to participate in it. *United States v. Khamis, supra*. The Court has reviewed the cases and is unable to find any case that requires a "plan" or the act of "planning" the substantive crime as argued by the Defendant.

In support of her argument that a conspiracy involves a "common plan," Defendant cites *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) and *United States v. James*, 528 F.2d 999, 1011 (5th Cir.1976). Defendant's reliance on both cases is misplaced; while the Defendant cites *Glasser* and *James* for the proposition that there need be an element of a "common plan," the actual language of both cases refers to a "common *purpose* and plan." *See, e.g., United States v. James, supra* at 1011 (emphasis supplied). In the context of "common purpose and plan," it is clear that the Supreme Court and the Fifth Circuit meant "plan" in the sense of a "proposed undertaking or goal," and *not* as "a detailed and systematic formulation of a program of action" as the Defendant would argue. *See Webster's Third New International Dictionary* (3d ed. 1981).

■ Defendant's mistaken argument that some plan must be shown is understandable, since the common understanding of conspiracy is that two or more persons act together and plan the ultimate crime

that is the object of conspiracy. *See, e.g.,* LaFave & Scott, *supra* § 61. The argument, however, fails to recognize that the focus of conspiracy law and its prohibitions are on the agreement; the actors may plan for days but the law does not criminalize such conduct unless and until the actors reach an agreement to achieve the same criminal object. *Id.* For example, a plan to take a victim's property does not become conspiracy to commit larceny unless both actors agree to permanently deprive the victim of his property. *Id.* at n. 139; Note, *Developments in the Law-Criminal Conspiracy,* 72 Harv.L.Rev. 920, 939 (1959). While evidence of the actual planning of the object of the conspiracy may be highly probative of the presence of the required conspiratorial intent, evidence of such planning is not necessary for conviction since "planning" is not a required element of the offense. *See, e.g., United States v. Khamis, supra,* 674 F.2d 392–93.

There are at least two reasons why evidence of planning is not required for a conspiracy conviction, one of which is practical and the other theoretical. As a practical matter, since conspiracy and any attendant planning is invariably conducted in secret because the very nature of conspiracy is secrecy, the "proof, by the very nature of the crime, must be circumstantial and therefore inferential to an extent varying with the conditions under which the crime may be committed." *United States v. James, supra* at 1011, *quoting with approval, Direct Sales Co. v. United States,* 319 U.S. 703, 714, 63 S.Ct. 1265, 1270, 87 L.Ed. 1674 (1943). Direct evidence of planning is generally not available unless one of the co-conspirators has agreed to testify for the Government. *See, e.g., United States v. James, supra.*

▮ More importantly, planning is not required on theoretical grounds. As noted by the Defendant in her supplemental brief, the conspiracy is complete upon agreement. *Defendant's Supplemental Brief in Support of the Motion to Dismiss Indictments* at 7, *citing with approval, United States v. Bayer,* 331 U.S. 532, 542,

67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947). Any planning that occurs after the agreement and an overt act, no matter how detailed, does not bear on the existence of conspiracy, as the crime has been completed, but rather is only evidence of the intent to do the crime and the agreement itself. As the Supreme Court has stated:

> The agreement need not be shown to have been explicit. It can instead be inferred from the facts and circumstances of the case.... In some cases reliance on such evidence perhaps has tended to obscure the basic fact that the agreement is the essential evil at which the crime of conspiracy is directed ... Nonetheless, agreement remains the essential element of the crime, and serves to distinguish conspiracy from aiding and abetting which, although often based on agreement, does not require proof of that fact, ... and from other substantive offenses as well.

*Iannelli v. United States,* 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 1289 n. 10, 43 L.Ed.2d 616 (1975) (cit.'s omitted); *see also Hanis v. United States,* 246 F.2d 781, 786 (8th Cir.1957); Marcus, *Criminal Conspiracy, supra* at § 2.02. While planning may occur both within conspiracy and in aiding and abetting, the essential difference is the agreement, and on a theoretical level no planning is required—only agreement. *See Iannelli v. United States, supra.* Defendant Chagra's focus on the element of planning obscures the basic fact that the crime with which she has been charged, and the essential evil which the law seeks to prevent, is the *agreement* to do a crime and her intent at the time of agreement; in this case, the murder of John H. Wood, Jr. with malice aforethought. The Court therefore rejects the Defendant's argument that conspiracy is a "plan" to commit a crime.

### 3. Conspiratorial Intent

▮ The issue of intent is the most critical in the law of conspiracy. *See, e.g., United States v. Harrelson, supra* at 1171–73. As Dean Marcus stated:

> The crime of conspiracy, unlike other substantive or inchoate crimes, can deal

almost exclusively with the state of mind of the defendant. What one can lawfully think about becomes criminal if the very same thought is conveyed into an agreement. The state of mind aspect of conspiracy is not concerned entirely with this agreement, however, ... 'the conspiracy consists not merely in the agreement of two or more but in their intention.' That is, in their agreement the parties must understand that they are uniting to commit a crime, and it must be their desire to complete that crime as the result of their combination.

Marcus, *Criminal Conspiracy, supra* § 2.09[1] (cit.'s omitted), *quoting with approval,* Harno, *Intent in Criminal Conspiracy,* 89 U.Pa.L.Rev. 624, 630 (1941). Stated in this fashion, it becomes clear that conspiracy involves two distinct states of mind, *i.e.,* dual specific intents. In theory, conspiracy thus requires two types of intent: intent to agree and intent to achieve the object of the agreement. *See United States v. Alvarez,* 610 F.2d 1250, 1255 (5th Cir.), *reh'g denied,* 625 F.2d 1196 (1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981); *United States v. Haldeman,* 559 F.2d 31, 113 n. 223 (D.C. Cir.1976), *cert. denied,* 431 U.S. 935, 97 S.Ct. 2646, 53 L.Ed.2d 253, *reh'g denied,* 433 U.S. 916, 97 S.Ct. 2992, 53 L.Ed.2d 1103 (1977).

 Though the proof of intent to agree is almost automatic upon proof of the agreement itself, the evidence must show defendant's specific intent to join the conspiracy. *United States v. Bulman,* 667 F.2d 1374, 1378 (11th Cir.1982); *United States v. Chandler,* 586 F.2d 593, 599 (5th Cir.1978), *cert. denied,* 440 U.S. 927, 99 S.Ct. 1262, 59 L.Ed.2d 438 (1979). Moreover, a conviction for a conspiracy cannot be sustained unless the Government establishes that the defendant has specific intent to violate the substantive statute. *United States v. Mora,* 598 F.2d 682, 684 (1st Cir. 1979) (For an excellent discussion of the dual specific intent theory, *see* W. Weir, *Conspiracy* § VIII (Rev.Ed.1982); Marcus, *Criminal Conspiracy* § 2.09[1]; LaFave &

Scott, *supra* § 61; Harno, *supra,* 89 Pa.L. Rev. at 631).

The Fifth Circuit recognizes the importance of distinguishing between the two required intents of conspiracy:

In conspiracy, as in most criminal acts, intent is an element of the offense. Conspiracy is, however, more complex because it involves two elements of intent that shade into each other: each party must have intended to enter into the agreement and the schemers must have had a common intent to commit an unlawful act.... There often may be no practical purpose in distinguishing between these two intentions, but, for the crime to be proved, there must be evidence sufficient to warrant belief beyond reasonable doubt that the defendant intentionally entered into an agreement to do an illegal act with the intention of consummating that act.

*United States v. Alvarez, supra,* 610 F.2d at 1255 (cit.'s omitted).

4. Conspiratorial Intent in the Instant Cause

In the first trial of this cause there was an extremely important purpose in distinguishing between these two conspiratorial intents; that was because the quantum of intent to agree and the quantum of intent to commit premeditated first degree murder are quite different. Intent to agree to conspire to murder requires only the specific intent to knowingly and willfully join in a conspiracy to murder, while the separate intent to achieve the object of the conspiracy (first degree murder as charged by the original indictment in the cause), additionally requires premeditation and malice aforethought. *See United States v. Harrelson, supra,* 754 F.2d at 1171–73. In the original trial, Defendant Elizabeth Chagra's conviction was reversed because the Court did not charge that the separate intent to achieve the criminal objective had to be knowing and willful, with premeditation and malice aforethought, and "conspiracy to commit a particular substantive offense cannot exist without *at least* that degree of criminal intent necessary for the substan-

tive offense itself." *United States v. Harrelson, supra* at 1172, *quoting with approval, Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959) (emphasis in original).

The superseding indictment changes the quantum of intent the Government must prove in the instant cause because it charges the Defendant with conspiracy to commit second degree murder and *not* conspiracy to commit first degree murder. The Government must therefore show Defendant Elizabeth Chagra's specific intent to join the conspiracy, and, in addition, must now prove that Defendant Chagra at least knowingly and willfully intended with malice aforethought that Judge Wood's killing would result from the conspiracy. If the Government is able to prove that Defendant Elizabeth Chagra entered the conspiracy with malice aforethought *and* premeditation, thus proving conspiracy to commit first degree murder, a conviction for conspiracy to commit second degree murder would stand as it is a lesser included offense of conspiracy to commit first degree murder. *See Berra v. United States,* 351 U.S. 131, 134, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956); 3 C. Wright, *Federal Practice and Procedure: Criminal* § 515 *et seq.* (2 ed. 1982); *see also United States v. Martino,* 648 F.2d 367, 382 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982).

Conspiracy requires that the actors intend to commit some substantive criminal offense. *See* LaFave & Scott, *supra* at § 61. In this case, the conspiracy was to murder United States District Judge John H. Wood, Jr. Conspiracy to murder in the federal system is prohibited by 18 U.S.C. § 1117, and because in this case the conspiracy to murder had as its target a federal judge, such conduct also violated 18 U.S.C. §§ 1114 and 1111. Since Section 1117 incorporates Section 1114, and particularly, Section 1111, *see United States v. Harrelson, supra* at 1172–74, each defendant must be charged with conspiracy to commit either first or second degree murder of a judge. In *United States v. Harrelson, supra,* the Fifth Circuit reversed

Defendant Elizabeth Chagra's original conviction because this Court failed to recognize that the substantive elements of Section 1111's prohibition of first degree murder were incorporated into Section 1117 because the conspiracy charge was conspiracy to commit first degree murder. *Id.* Implicit in the *Harrelson* Court's ruling is the fact that the prohibition on second degree murder contained in Section 1111 may also be incorporated into Section 1117.

### 5. Conspiratorial Intent and Murder

As noted earlier, murder is separated into degrees by the quantum of willfulness in order to determine whether a defendant deserves the harsher penalties of first degree murder. *See* discussion in Section IV.C., *supra; United States v. Austin, supra.* In most crimes, the requirement of intent goes to the existence of the crime, *see* LaFave & Scott, *supra* at § 28; in murder the requirement of intent goes to both the existence *and* the level of punishment. *See* LaFave & Scott, *supra* §§ 67–73. The use of intent to measure both the existence of murder and its quantum of punishment is unique in Anglo-American jurisprudence. *Id.* The modern trend, however, is to eliminate the use of intent to determine the level of punishment (by separating murder into degrees), and instead to define murder as a single crime with the quantum of intent taken into account at the sentencing phase. *See, e.g.,* Model Penal Code § 210.6. The Model Penal Code does not utilize the degree device, but instead lists several mitigating and aggravating factors which are taken into account at the time of sentencing, as the draftsmen believed that the premeditation-deliberation formula is not a sound basis upon which to determine the severity of the sanction to be imposed upon the murder defendant. *Id.* at commentary; LaFave & Scott, *supra* at § 73 n.'s 33–35.

By focusing on the factual distinctions between the acts of first and second degree murder, the Defendant seeks to suggest that first and second degree murder are entirely separate crimes. In essence, how-

ever, they are both the same crime—the unlawful taking of another's life with malice aforethought—that are differentiated by the element of premeditation for purposes of assessing punishment. In the instant cause, the Government alleges the unlawful object of the conspiracy was the murder of John H. Wood, Jr. and that the quantum of intent possessed by Elizabeth Chagra was malice aforethought. *See* Superseding Indictment in Cause No. SA–82–CR–57(4). Although the Court believes that the quantum of intent possessed by Defendant Elizabeth Chagra is essential to the Government proving the crime alleged in the Superseding Indictment, the Court is of the opinion that the quantum of willfulness of the other co-conspirators is unimportant so long as one other co-conspirator shared at least the intent to kill Judge Wood with malice aforethought.

▄ The Court's conclusion is primarily based upon an analysis of general conspiracy principles. The prohibition of conspiracy serves two distinct purposes, the punishment of group behavior and the control of inchoate activities. *See* Marcus, *Criminal Conspiracy, supra* at § 1.04; *Krulewitch v. United States,* 336 U.S. 440, 448–49, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (Jackson, J. concurring); *United States v. Alvarez, supra.* In the context of the purpose of the law of conspiracy, society's requirement of intent to agree and intent to commit the substantive crime are necessary for two reasons. First, the requirement of intent to agree is important because by showing the agreement, the Government is justified in stepping in at the inchoate level because the criminal intent has been manifested in some overt way. Second, the requirement of an intent to do the substantive offense that is shared by the co-conspirators is important because there is little added danger unless the parties are working together for the same illegal end. In the instant cause, both purposes will be satisfied regardless of the exact quantum of intent of each of the co-conspirators, so long as all shared at least the intent to kill with malice aforethought, because at the point of agreement, each had manifested his intent to participate in the inchoate offense and because each had joined together to pursue the group objective of the death of John Wood, regardless of the amount of individual reflection upon the enormity of the crime. Based upon the foregoing analysis, the Court is of the opinion that a conspiracy to murder may be composed of co-conspirators with the same common object, the murder of another with malice aforethought, but whose individual reflections upon the intent to murder may lead to a finding some are guilty of conspiracy to commit different degrees of murder.

6. Truncated Intent

▄ The Court further believes that the unique nature of the crime of conspiracy and the particular facts in this cause may lead to a very logical charge of conspiracy to commit second degree murder. As the Defendant has noted, the "conspiracy is complete upon agreement" and any overt act by any conspirator. *Defendant's Supplemental Brief in Support of Motion to Dismiss Indictments* at 7. The intent of the actor is thus frozen and measured upon her agreement to join the conspiracy and the completion of any overt act involved in conspiracy to murder. In effect, the agreement acts to truncate the deliberation process if the conspiracy is completed prior to the completion of deliberation and meditation. *See Defendant's Proposed Jury Instruction no. 4; cf.* Marcus, *Criminal Conspiracy* § 2.09.

The evidence presented at the first trial clearly showed that the conspiracy Defendant Elizabeth Chagra joined, if she indeed did join, was in existence for some time before the fateful "kitchen discussion," *see* Government's exhibit 27 (Letter from Elizabeth Chagra to Mrs. Katherine Wood); and further that the other co-conspirators possessed at least the intent to kill with malice aforethought and overt acts had been completed. *See* Transcript of Joe Chagra's testimony in the original trial of Defendant Elizabeth Chagra. Whether the proof at this trial will show that Defendant Elizabeth Chagra joined the conspiracy on im-

pulse in the kitchen or in the bedroom (as the tapes indicate), or in the heat of passion, or even after cool reflection, will not be known until the jury finds the facts in the retrial.

It is quite possible, however, that the evidence will show that the Defendant joined the conspiracy on impulse, or otherwise, with malice aforethought and the intent that Judge John Wood be killed; and under Defendant's theory of the law, her intent would be frozen at the moment of any agreement in the kitchen or the bedroom—with the intent necessary for second degree murder. Under Defendant's theory, subsequent planning would not ripen this intent to conspire to commit second degree murder into intent to conspire to commit first degree murder, because Defendant's intent would have been frozen at the instant of agreement because the crime was complete—as the other conspirators had already agreed and overt acts had taken place. In effect, the conspiratorial agreement would act to truncate the reflection process necessary under more normal circumstances for a finding of conspiracy to commit first degree murder. Since agreement completes the crime of conspiracy to murder (where an overt act has taken place), it would be logical to charge a conspirator with conspiracy to commit second degree murder where the agreement cuts short the deliberation process, as the evidence may very well show in the instant case.

### 7. *Conspiracy Summary*

The essence of the crime of conspiracy is a conspiratorial agreement. Once the conspirators reach the agreement, and any conspirator completes any overt act, the crime is complete. Conspiracy requires two intents; the specific intent to agree to conspire, which requires willfulness, and the specific intent to achieve the object of the conspiracy, which requires the intent necessary to complete the object offense. The intent of the actor is measured at the point where the conspiracy is complete, which may be at the precise moment of

agreement if the requisite overt act has been completed.

Since there is no requirement of "planning" in conspiracy, the Court rejects the Defendant's argument that conspiracy is a "plan" to commit a crime. In the instant cause, the Government must prove Defendant Elizabeth Chagra conspired to commit second degree murder; thus, the Government must show that the Defendant willfully intended to and joined the conspiracy, and must further prove that the Defendant intended to conspire with malice aforethought to murder Judge John H. Wood, Jr. Where the conspiratorial object is to murder, the exact quantum of willfulness of each actor is unimportant so long as two co-conspirators shared at least the intent to kill the victim with malice aforethought.

Defendant Chagra's own theory of the case repudiates her stated premise that conspiracy involves a "plan" to commit a crime. As Defendant has noted, conspiracy is complete upon agreement and that the intent must be measured at that point. In the instant cause, the evidence could very well show that Defendant Chagra joined the conspiracy on impulse during the kitchen or bedroom discussion, thus truncating the deliberation process involved in murder. A conspiracy to commit second degree murder would therefore be a logical charge where an actor joined on impulse a then existing conspiracy to commit murder. After due consideration of Defendant's arguments and the applicable law and analysis, the Court rejects Defendant's argument that it is illogical to charge a conspiracy ("plan") to commit an unplannable crime (second degree murder), because conspiracy requires agreement and not a plan, and because the agreement could very well truncate the murder intent deliberation process.

### E. *State Law on Conspiracy to Commit Second Degree Murder*

The Court has reviewed the state law cases cited by the Defendant, both in support of her argument and those she seeks to distinguish, and finds none of them ulti-

mately persuasive on the issues before the Court. As Defendant herself has noted, the Michigan Courts of Appeal are split on the issue of whether a prosecutor can charge conspiracy to commit second degree murder. *Compare People v. Owens,* 131 Mich.App. 76, 345 N.W.2d 904 (1983) *with People v. Fernandez,* 143 Mich.App. 388, 372 N.W.2d 567 (1985). While this split of authority not only indicates some confusion in the Michigan court's analyses, the Court further notes that the *Fernandez* court bases its rejection of the existence of the crime of conspiracy to commit second degree murder on its finding that "planning" is a "necessary, mandatory requisite element of the crime of conspiracy." *Fernandez, supra,* 372 N.W.2d at 570. Since this Court has already rejected the notion that planning is an essential element of the federal law of conspiracy, the *Fernandez* rationale is unpersuasive because it is based upon a false premise. *See* discussion, *supra* at § IV.D.2.

As to the cited California cases, the Defendant admits that the one case which held that conspiracy to commit second degree murder as an impossibility has at least been implicitly overruled. *See People v. Horn,* 12 Cal.3d 290, 524 P.2d 1300, 115 Cal.Rptr. 516 (1974). The Court further notes with particular interest the following language in the *Horn* opinion:

> There is another fundamental reason why we cannot treat all conspiracies to commit homicide as conspiracies to commit first degree murder.... 'Dividing intentional homicides into murder and voluntary manslaughter was a recognition of the infirmity of human nature. Again dividing the offense of murder into two degrees is a further recognition of that infirmity and of difference in the quantum of personal turpitude of the offenders. The difference is basically in the offenders ...' Since the punishment for a conspiracy to commit a homicide is the same as the punishment for the conspired felony ... we must undertake the same delicate weighing of personal turpitude of conspirators to commit homicide. If because of intoxication or mental inca-

pacity the personal turpitude of a conspirator indicates [a lesser intent], it would be wholly unjust to punish him as a first degree murderer solely because he acted in concert with another person of equal diminished capacity.

*Id.,* 524 P.2d at 1309, 115 Cal.Rptr. at 525 (cit.'s omitted). The *Horn* court's analysis supports this Court's finding that the "personal turpitude," *i.e.,* the quantum of willfulness, should reflect not on the existence of the conspiracy but rather on the quantum of punishment therefore. The Government should not be foreclosed from the prosecution of a party solely because she entered the conspiracy with a different level of a reflection upon the enormity of her crime, or even because the Government cannot prove the same reflection as the other co-conspirators, so long as the Government can prove that she shared the intent to complete the same unlawful purpose, *i.e.,* the murder of John H. Wood, Jr.

### F. *Conclusion*

Defendant Elizabeth Nichols Chagra moves to dismiss the Superseding Indictment in Cause No. SA–82–CR–57(4) for failure to allege an offense. Defendant argues that it is illogical to presume that Congress "created an offense which punishes the concerted planning (conspiracy) of an unplannable crime (second degree murder). *Defendant's Supplemental Brief in Support of Motion to Dismiss Indictments* at 2. Defendant cites no statutory or case law precedent that compels this Court to dismiss the offense, but rather relies upon "a plain reading of the federal homicide statutes, ... judicial opinions interpreting them, ... the common law, and ... common sense." *Id.* Since this Court is guided by the Eleventh Circuit's admonition that a "district court should approach with delicacy and circumspection the question of whether to dismiss a case on the ground that" the indictment fails to allege an offense, *United States v. Coia, supra,* 719 F.2d at 1125, and heeds the Ninth Circuit's instruction that "judicial respect for the independence both of the prosecu-

**1412**

tor and the grand jury" compels a limited "review of an indictment" with dismissal only where there is a "clear basis in fact and law" *United States v. McClintock,* 748 F.2d at 1283–84, this Court has conducted a detailed and deferential analysis of whether it should exercise its supervisory powers to dismiss the indictment.

In her conclusion, the Defendant argues that the "government now makes a mistake it has made before in interpreting 18 U.S.C. 1117 [sic]." *Defendant's Supplemental Brief in Support of Motion to Dismiss Indictments* at 14. Although the Court agrees that the current dispute involves the same mistake as made in the original trial of this cause, the Court believes that it is the Defendant, and not the Government, that argues in error. The Defendant argues that conspiracy is a plan, *id.* at 6–7; that first degree murder requires premeditation and is therefore a *planned* murder, *id.* at 3–5; and, *ipso facto,* conspiracy to commit murder can only be conspiracy to commit first degree murder, because conspiracy to murder necessarily subsumes the premeditated intent ("plan") to commit that murder. *Id.* at 7.

Defendant thus makes the same mistake that this Court made in instructing the jury in the original trial of this cause, and that the Government made in arguing this case to the Fifth Circuit, an argument that the Fifth Circuit emphatically rejected: that the intent to conspire to murder ("the plan") subsumes the separate intent element of premeditation and deliberation. *See United States v. Harrelson, supra,* 754 F.2d at 1171–74. The Defendant cannot have it both ways; either the intent required for conspiracy subsumes premeditation and deliberation ("the plan," as argued in the instant motion to dismiss), or premeditation and deliberation is a separate element that must be separately proved (as argued on appeal of Defendant Chagra's conviction in the original trial of this cause). In this respect, this Court has the clear mandate of the Fifth Circuit that premeditation is not subsumed within the definition of conspiracy.

While the Defendant's argument, that it is illogical to assume that Congress intended to create an offense that requires a plan to commit an unplannable crime (a plan to murder in the heat of passion), appears plausible at first glance, the limited situation suggested by Defendant does not control the issue before the Court on the motion to dismiss for failure to allege an offense for several reasons. First, the Court has shown that the crime of conspiracy involves an agreement, and not necessarily any plan. Thus, Defendant errs when she insists that conspiracy is a "plan to commit" a substantive crime. The Court has also shown Defendant's error in assuming all second degree murder is murder in the heat of passion, as there are several types of second degree murder not involving the heat of passion. Furthermore, the Court has shown that planning can be involved in at least two separate second degree murder situations; including intent-to-do-serious-bodily-injury murder, and more importantly, intent-to-kill second degree murder where the Government is unable to prove beyond a reasonable doubt, for whatever reason, the necessary element of premeditation and deliberation. *See, e.g., Hemphill v. United States, supra.* Finally, under Defendant's own theory of the case, Defendant Elizabeth Chagra's intent is frozen at the completion of the agreement, and thus Defendant's deliberative process might have been cut short by the agreement at the malice aforethought stage. The Court approached the Defendant's motion to dismiss with delicacy and circumspection, and after due consideration, is unable to impose the drastic sanction of dismissal of the indictment under the circumstances presented by this case.

IT IS SO ORDERED on this 26th day of February, 1986.